NB:LTG/JLG/MRM
F. #2018R00279

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -                           17-CR-587 (JMA)

CHRISTOPHER MCPARTLAND and
THOMAS J. SPOTA,

              Defendants.

- - - - - - - - - - - - - - - - - - -X

GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS'
<u>JOINT SUPPLEMENTAL PRE-TRIAL MOTIONS</u>

                                        RICHARD P. DONOGHUE
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        610 Federal Plaza
                                        Central Islip, New York 11722

Lara Treinis Gatz
Justina L. Geraci
Michael R. Maffei
Assistant U.S. Attorneys
    (Of Counsel)

INTRODUCTION

The government respectfully submits this memorandum of law in opposition to the joint supplemental pre-trial motions filed by defendants Christopher McPartland ("McPartland") and Thomas J. Spota ("Spota") (collectively, the "defendants") on August 30, 2019 (the "Motions" or "Mot.").

The instant Motions seek, *inter alia*, orders from this Court directing the government to provide to the defense certain documents and materials, namely: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (2) all *Giglio* and Jencks Act material, as well as witness and exhibit lists, at least 45 days prior to trial; (3) all material contained within the Suffolk County Department of Information Technology's ("SCDIT") "backup tapes" of electronic data for all potential government witnesses; and (4) any statements made by James Burke ("Burke") ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Additionally, the Motions seek to preclude the use of the grand jury testimony of ▬▬▬▬▬▬▬▬▬▬.

The government submits that this Court's rulings of September 11 and 12, 2019 have already resolved the majority of the defense's disclosure requests. With respect to the remainder of the Motions – those relating to the grand jury testimony of ▬▬▬ and to Burke's allegations concerning ▬▬▬▬▬▬▬▬▬ – as set forth herein, the government submits that they should be denied in their entirety and without a hearing.[1]

---

[1] As the Court is undoubtedly familiar with the background and procedural posture of this case from earlier briefings, and because the instant Motions deal with certain discrete issues which do not call for a lengthy recitation of the facts, the government has not included this background information in this briefing.

2

ARGUMENT

I. THE COURT HAS RESOLVED THE MAJORITY OF THE DEFENDANTS' DISCLOSURE REQUESTS, SUCH THAT FURTHER BRIEFING IS UNNECESSARY

On September 11, 2019, the Court ordered the government to disclose to the defense materials pursuant to *Giglio v. United States*, 405 U.S. 150, 154 (1972), and its progeny, and pursuant to the Jencks Act, 18 U.S.C. § 3500 (hereinafter, the "3500 Material") on or before October 9, 2019 – more than 30 days prior to the start of any trial witness testimony.[2] Additionally, on September 12, 2019, the Court ordered the government to provide – and the government has, indeed, provided – to the defense the names of any actual or potential government witnesses whose electronic files would likely be contained on the SCDIT "backup tapes," in full resolution of the defense's request with respect to this electronic data, as well as satisfying the defense's request for a government witness list.[3]

To the extent the Court, or the defense, disagrees that these disclosure issues have been resolved, the government respectfully reserves its right to submit supplemental briefing on any unresolved issue.

---

[2] Although some of the 3500 Material to be produced by the government next month will be associated with individuals who were also identified in the government's two *Brady* disclosure letters, the government objects to the defense request that it provide *all* statements of *all* witnesses identified in its disclosure letters. Not every statement of every witness constitutes exculpatory material or material useful for the defense. The government submits that its descriptions of the substance of the exculpatory statements made by each witnesses, along with the identity of the witness and that witness's counsel (for ease of contact), amount to sufficient disclosure.

[3] The government also intends to call certain witnesses who are *not* former (or current) Suffolk County employees, and who therefore do not appear on this list, including, for example, an expert witness who has previously been disclosed to the defense. However, the fact is that the witness list that was disclosed to the defense on September 13, 2019 does include the majority of the government's trial witnesses.

3

II. **THERE IS NO LEGAL BASIS TO PRECLUDE THE GOVERNMENT FROM USING ███████ GRAND JURY TESTIMONY AT TRIAL**

The defendants seek to preclude the government from utilizing what they describe as "all objectionable portions" of the grand jury testimony of ██████ at trial for any purpose, on the grounds that the testimony was purportedly "improperly obtained" and/or "the admission of which would otherwise violate the Federal Rules of Evidence." Def. Mot. at 25. For the reasons set forth below, this request should be denied in its entirety.

By way of background, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ was advised prior to the grant of immunity that he was a subject of the grand jury investigation, as he was believed to be a coconspirator in the cover up of the assault by then Chief of Department James Burke of a shackled prisoner, a cover-up that spanned nearly five years. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Counsel argues that the government improperly cross-examined ██████ in the grand jury on certain topics by allegedly: (1) asking questions that called for hearsay; (2) asking questions for which the witness did not have first-hand knowledge; (3) badgering the witness; (4) repeatedly misstating the witnesses prior testimony; (5) asking questions which contained certain thoughts and views; and (6) eliciting improper opinion testimony.

Critically, there is no case law cited by the defense in which a trial court has suppressed a witness's immunized grand jury testimony for any reason, let alone because the defendants objected to the manner in which the witness was questioned. There is no case law on point, because whole-cloth preclusion of the use of grand jury testimony is a dire remedy for the claimed harm here. It is up to the prosecutor to determine how rigorously to cross examine a witness in the grand jury in an attempt to discover the truth. *See generally*, *United States v. Salerno*, 505 U.S. 317, 328-29 (1992) (Stevens, J., dissenting).

The only basis upon which Courts have denied the use of a prior statement to impeach a witness is in the context of involuntary confessions. In *Harris v. New York*, 401 U.S. 222, 226-27 (1970), and *Oregon v. Hass*, 420 U.S. 714, 722-24 (1974), the Supreme Court held that voluntary statements made in the absence of *Miranda* warnings are admissible for impeachment purposes only. The rationale behind the rule is that deterring perjury trumps punishing police impropriety. *Id*. Involuntary statements, however, are never admissible, even for purposes of impeachment. *United States v. Brown*, 699 F.2d 585, 590 (2d Cir. 1982).

Notably, the defendants in the instant matter do not suggest that ▮▮▮▮▮ testimony was involuntary or that he was coerced in any way during questioning. Rather, counsel seems to suggest that, in their view, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ However, this argument is belied by a review of the testimony. Even a cursory review reveals that ▮▮▮▮ was a difficult witness who often failed to answer direct questions, was evasive, suffered from convenient memory lapses and generally refused to give definitive answers – though he did, eventually, answer the questions. In

5

other words, while ▇ did not want to answer questions and incriminate his coconspirators, he was required to testify truthfully. Undeterred by his reluctance, the government asked question after question in an effort to get to the truth. Notably, ▇ never objected to the manner of questioning, nor complained that his testimony was being twisted or that the government was misleading him. In fact, quite the contrary, ▇ never asked for a break while being questioned, or requested the opportunity to consult with his attorney. In fact, the transcripts demonstrate that ▇ was properly questioned concerning what he heard and saw and eventually had to answer the questions fully, despite his obvious reluctance to do so.

Moreover, ▇ was far from a vulnerable witness. He was and is ▇ ▇ one of the principal actors in a years-long conspiracy to obstruct a federal grand jury investigation. During his testimony, in an attempt to evade answering questions, he sparred and parried while trying, unsuccessfully, to deflect responsibility and exculpate his friends and colleagues. Perhaps his reluctance to testify was due to his inability to accept responsibility for his own criminal conduct, coupled with his fear of detailing the illegal acts of his coconspirators. Regardless of the motives for his behavior in the grand jury, the transcript demonstrates that ▇ answered questions about which he had first-hand knowledge, and while he was vigorously cross-examined, he was not badgered, nor was his prior testimony misstated. This form of questioning was not improper, as he was a hostile witness who did not want to answer the questions the government posed to him. Moreover, while he did opine and answer questions which contained certain thoughts and views of the prosecution, none of this was improper and certainly does not preclude the use of his testimony. These issues are properly resolved during ▇ appearance at the trial, as objections raised on a question by question basis.

6

It is important to note that Defense Exhibits A and B to the defendants' Motion span close to 50 pages analyzing every question and answer in a misguided attempt to convince the Court that the questioning of ▇▇▇ was improper, when it clearly was not. While the motion and accompanying exhibits repeatedly and unfairly chastise the government for asking perfectly legitimate questions, the defendants reveal their proverbial true colors by repeatedly interjecting their opinions about what the witness meant, and ironically twisting and mischaracterizing the testimony to suit their current purposes; precisely what they accuse the government of doing.

In any event, as no claim of involuntariness was posited and no legal basis for preclusion has been cited, the Court should not preclude the use of the grand jury testimony at trial for any and all permissible purposes when ▇▇▇ testifies, and take any objections on a question by question basis.

In sum, ▇▇▇ was a well-prepared, immunized witness who reluctantly told the truth after his testimony was properly elicited through a thorough and vigorous cross-examination that was necessary to obtain the truth. Thus, as this witness's testimony was properly obtained, the defendants' Motion should be denied.

### III. THERE IS NO LEGAL BASIS TO COMPEL THE PRODUCTION OF BURKE'S STATEMENTS ABOUT ▇▇▇

The defendants ask the Court to direct the government to disclose any and all statements made by Burke regarding ▇▇▇

As the Court is aware, the government has produced to the defense and to this Court the entirety of ▇▇▇

7

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

The defendants, however, seek the statements of Burke – who, to the government's knowledge, ███████████████████████████████████████ ███████████████████████████████████████████████████ claiming that these statements provide "crucial context to the records, including with respect ████████ ████████████████████████████████ Def. Mem. 37.

As a threshold matter, the nature and extent of an ███████████████ ████████████████████████████████████████████████████████ is not within the common knowledge of a lay person, like Burke, and therefore, is not a proper subject for Burke's lay opinion. Indeed, Federal Rule of Evidence 701 specifically prevents parties from offering "an expert in lay witness clothing," and hence, evading Rule 702's reliability requirements and the expert witness disclosure requirements. *See* Fed. R. Evid. 701 Advisory Committee Notes to the 2000 Amendments ("any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by

---

[4] ████████████████████████████████████████████████████████████ ██████

[5] The government's July 31, 2019 motion to preclude the defense from introducing any evidence of, or conducting cross-examination about, the facts and circumstances ████████ ██████████████████████████████████████████ at that time remains pending.

the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules"). Therefore, Burke's layman statements and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ whether accurate or not – are irrelevant, and would clearly be inadmissible at trial.[6]

The defendants have cited no caselaw whatsoever for the proposition that a layperson's statement or opinion concerning a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ constitutes *Brady* and/or *Giglio* material for that witness – both in general, and particularly following the fulsome disclosure of that witness's official ▮▮▮▮▮▮▮▮. Indeed, nearly every case cited by the defendants, in both their August 8, 2019 letter to the Court (incorporated by reference via citation within the instant motion, *see* Def. Mem. at 36) and in their more recent memorandum of law simply deals with the disclosure of a witness's official ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ At this time, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Therefore, any such statements made by Burke to the contrary are immaterial.

Finally, although the defense is correct that the government intends to move *in limine* to introduce at trial certain statements made by Burke pursuant to the so-called co-

---

[6] Even assuming these statements are relevant, their probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Fed. R. Evid. 403. The defendants are now well aware that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Gov't Ltr. July 31, 2019, and Electronic correspondence dated August 26, 2019 (attached hereto as Exhibit A). Therefore, the defendants' only reason for introducing statements made by Burke that are wholly inconsistent with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ would be to confuse the issues, cast aspersions on ▮▮▮▮ and mislead the jury.

9

conspirator exception to the hearsay rule, Federal Rule of Evidence 801(d)(2)(E),[7] the government has no obligation to disclose Burke's statements pursuant to 18 U.S.C. § 3500. *See United States v. Shyne*, 617 F.3d 103, 106-108 (2d Cir. 2010) (holding that the application of Federal Rule of Evidence 806 does not extend the Jencks Act to require disclosure of statements made by non-testifying declarants). In a blatant effort to subvert this requirement, the defense now argues in the alternative, and attempts to characterize Burke's allegations concerning ▮▮▮▮ as *Brady* and/or *Giglio* material, this time with respect to Burke himself, and seeks to use these *false* statements to impeach Burke's credibility. Def. Mem. at 38.[8]

For the reasons set forth above, pursuant to Fed. R. Evid. 403, 701 and 702, the government submits that this line of impeachment cross-examination of Burke should be precluded. The defendants must not be permitted to introduce prejudicial laywitness statements concerning a witness's ▮▮▮▮, that would otherwise be precluded, through the impeachment of that same laywitness. This is simply an end run to avoid the requirements of the Federal Rules of Evidence.

Therefore, the government respectfully submits that it is under no obligation to disclose statements made by Burke concerning ▮▮▮▮

---

[7] Rule 801(d)(2)(E) provides a hearsay exclusion for out-of-court statements made by co-conspirators. In order to admit a statement under Rule 801(d)(2)(E), the Court must find by a preponderance of the evidence "(1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993) (citations omitted).

[8] To be clear, Burke has never proffered with, or made statements to, the government concerning ▮▮▮▮ The defense appears to be referring to statements made by Burke to other individuals – likely in an attempt to discredit ▮▮▮▮ – the substance of which they also appear to be sufficiently aware.

10

and furthermore, that the defense should be precluded from eliciting such statements from any witnesses.

## CONCLUSION

For all the reasons set forth above, the government respectfully submits that the Motions which have not already been resolved by order of the Court should now be denied in their entirety.

Dated:     Central Islip, New York
            September 18, 2019

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     _____/s/_____
Lara Treinis Gatz
Justina L. Geraci
Michael R. Maffei
Assistant U.S. Attorneys