**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T  +1 212 841 1000

November 11, 2019

**BY ECF AND EMAIL**

The Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re: *United States v. Christopher McPartland, et al.*, 17-cr-0587 (JMA)

Dear Judge Azrack:

We submit this letter on behalf of the defendant Thomas Spota and in response to the government's unsolicited and untimely letter brief, dated November 10, 2019, concerning the admission of James Burke's IAB file and related documents. Simply put, the government's submission again lays bare its strategy—in the face of paltry direct evidence—to convict the defendants through the introduction of highly inflammatory other-act evidence. The government, in effect, seeks to turn the side show into the show. But enough is enough. The cumulative prejudicial effect of this evidence is now well nigh crippling, and the Court must say so.

The 1993 IAB Case

The Court has already ruled (over our objection) that the government may admit evidence concerning IAB Case 93-152 in order to prove Burke's alleged hatred of one of the investigating officers in that case, Patrick Cuff, and to provide context for the allegedly retaliatory actions Burke took against Cuff (including acts the defendants *had no involvement in*).

But that ruling by no means necessitates admitting evidence setting forth detailed descriptions of the salacious allegations against Burke in IAB Case 93-152—most of which were deemed to be unsubstantiated, and all of which turn on the fact that Burke had sex with a prostitute, a facially inflammatory fact that would smear the defendants merely for their association with Burke. *See, e.g.*, Defs.' Opp. Br. at 20–21 (collecting cases noting prejudicial effect of evidence concerning prostitution). Moreover, the evidence is simply not necessary to explain Burke's alleged hatred of Cuff—admission of the fact of the investigation, the outcome, and Cuff's involvement would suffice. Given the minimal probative value of the IAB case file, and the high risk of unfair prejudice, this evidence must be excluded.

COVINGTON

Nor does the Court's ruling warrant the admission of evidence reflecting that Mr. Spota served as Burke's private attorney in this matter. In the context of this trial (where the government intends to portray Burke and Mr. Spota as extremely close), such evidence would inevitably lead to the inference that Mr. Spota deserves reproach for his entirely legal and proper representation of Burke. The government's effort to twist that legal and proper representation into a predicate for finding that Mr. Spota joined Burke in a retaliatory cabal is misguided and highly prejudicial, and must be rejected.

The 1999 IAB Case

The government's request to admit IAB File 99-41, concerning the charge that Burke was running a prostitution ring, is even more outlandish. As an initial matter, the government's argument for admitting the evidence is entirely illogical—it is ludicrous to assert that Burke hated Cuff because Cuff deemed a charge against Burke to be *unsubstantiated*. Indeed, the file states that "not . . . one individual . . . could provide first hand information to corroborate any of these allegations." *See* IAB File 99-41 at 1. Given the government's utter failure to provide a logical rationale for the relevance of this evidence, and the extreme risk of unfair prejudice that admission of this facially scurrilous and unsubstantiated allegation would pose to Mr. Spota, the evidence must be excluded.

The Anonymous Letter

Finally, admitting the anonymous letter would be tantamount to denying Mr. Spota a fair trial on the actual charges in this case.

The government seeks to introduce the letter—an anonymous, unsworn, multi-page screed of almost entirely unfounded and outrageous accusations against Burke—solely so that the jury may determine whether a response to a single paragraph in that letter was accurate. Put simply, it is very hard to imagine a more unfairly prejudicial piece of evidence than that letter. And given the government's narrative of the close relationship between Burke and Mr. Spota, it is entirely implausible that the jury could be exposed to the letter's numerous, shocking allegations and still fairly judge Mr. Spota on the instant charges.

Presumably aware of the extraordinary risk of prejudice the letter poses, the government goes to extreme lengths to argue the relevance of the letter. The government asserts (in painfully hyperbolic terms) that the letter proves the "superhuman lengths" Mr. Spota went to in order to promote Burke's career. *See* Gov't Ltr. at 4. But the government does not need this flagrantly prejudicial letter to make that case. It has a plethora of other evidence to prove that point, including the fact that Mr. Spota consistently supported Burke's rise through the ranks of the Suffolk County law enforcement community over a period of many years.

**COVINGTON**

The government asserts, as the predicate for admission of the letter, that it undermines Mr. Spota's defense that Burke lied to him about his assault of Christopher Loeb. But that is a complete *non sequitur*. That Mr. Spota, as Burke's *private counsel*, knew that Burke *admitted* to misconduct in an IAB proceeding in no way supports that Mr. Spota, as the *District Attorney*, knew that Burke was lying when he *denied* assaulting Loeb (as Burke did again, and again, and again). The argument simply fails on its own terms.

Moreover, that argument rests on the legally proscribed notion that because Mr. Spota knew Burke was guilty of one offense (conduct unbecoming an officer in 1993), he knew that Burke was guilty of another (the 2012 assault of Christopher Loeb). This line of argument rests on the untenable proposition that Burke had a propensity to engage in wrongdoing, and Mr. Spota knew it (despite all evidence to the contrary). The Federal Rules of Evidence prohibit the government from pursuing such an argument. *See, e.g.*, Fed. R. Evid. 404(b); *United States v. Ulbricht*, 79 F. Supp. 3d 466, 480 (S.D.N.Y. 2015) (citing *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009)) (stating it is "improper to receive evidence ostensibly as probative of knowledge and intent when it is in reality 'propensity evidence in sheep's clothing'"); *States v. Cushing*, No. S3:00-CR-1098 (WHP), 2002 WL 1339101, at *3 (S.D.N.Y. 2002) (precluding introduction of propensity evidence under Rule 404(b)); *United States v. Sampson*, No. 13-CR-269 S-5 (DLI), 2015 WL 2066073, at *8 (E.D.N.Y. May 4, 2015) (same).

Because the letter, whatever its relevance, is overwhelmingly and unfairly prejudicial and needlessly cumulative, and because its admission would be premised on the prohibited notion that Burke had a propensity for wrongdoing, the letter (and the associated documents the government seeks to admit) must be excluded.

\* \* \*

The amount of extraneous, other act evidence being admitted in this case is mountainous and already undermining the defendants' right to a fair trial on the actual charges in the indictment. *See, e.g.*, *United States v. Long*, 917 F.2d 691, 705 (2d Cir. 1990) (reversing convictions in light of cumulative prejudice). The Court should—indeed must—resist the government's invitation to obliterate that fair trial right altogether. For this evidence in particular, the damage to that right for Mr. Spota will be crippling, and the prejudicial spillover to Mr. McPartland unacceptable.

For all of the foregoing reasons, the government's motion *in limine* to admit this evidence must be denied.

Respectfully submitted,

*AVinegrad/EM*

Alan Vinegrad

cc (by e-mail): all counsel of record

3