

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

LTG

*610 Federal Plaza*
*Central Islip, New York 11722*

November 10, 2019

**UNDER SEAL**
**VIA ECF**
The Honorable Joan M. Azrack
United States District Court
Eastern District of New York
924 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. McPartland and Spota
               Criminal Docket No. 17-CR-587 (JMA)

Dear Judge Azrack:

      The government respectfully submits this letter in response to the Court's November 9, 2019 Order, specifically, the portion of Order outlining the Court's deferred rulings concerning: (1) the entirety of Burke's IAB file (the "IAB File"), including the unsubstantiated allegations in the file; (2) defendant Spota's representation of Burke; and (3) the 2011 anonymous letter about Burke and the response from defendant Spota.[1]

      Burke's IAB File

      On February 19, 2019, the defense was provided with Burke's entire IAB File, which detailed twenty-one IAB investigations concerning Burke, between October 9, 1987 and July 8, 2013. (Bates Nos. 146 - 2141). While the government marked the entirety of the IAB File as an exhibit, the government only intends to use a select portion of the IAB File at trial, namely; Bates Nos. 638-740 (IAB Case 93-152), Bates Nos. 875-876 (IAB Case 94-699) and Bates Nos. 1675-1739 (IAB Case 99-41)[2] for reasons set forth in more detail below.

      IAB Case 93-152 (the "Rickenbacker Charges")

      In IAB case 93-152, Burke was alleged to have engaged in the following conduct as outlined in the March 22, 1995 Internal Correspondence from Sergeant Vincent

---

[1]    Govt. Ex. 924 is annexed hereto in response to the Court's Order.

[2]    Copies of these files are annexed hereto as Exhibit "A, B & C."

Posillico[3] to Inspector John P. Henry:

    I.    Consumed crack cocaine

    II.    Failed to invoice crack cocaine, which came into his possession in the performance of his duties.

    III.    Had a personal sexual relationship with Lowrita Rickenbacker, a convicted felon known to be actively engaged in criminal conduct, including the possession and sale of illegal drugs, prostitution and larceny in the First Precinct area.

    IV.    Engaged in sexual acts with Rickenbacker in police vehicles while on duty and in uniform.

    V.    Failed to safeguard his service weapon and other department property and as a result, Lowrita Rickenbacker came to possess said weapon and property for a period of time.

    VI.    Witnessed illegal conduct committed by Rickenbacker and others and failed to take police action.

    VII.    Consumed alcoholic beverages while on duty and in uniform.

The same memo outlines Sergeant Posillico's substantiated findings (III, IV & V), namely; that Burke had personal sexual relationship with Lowrita Rickenbacker, a convicted felon known to be actively engaged in criminal conduct, including the possession and sale of illegal drugs, prostitution and larceny in the First Precinct; engaged in sexual acts with Rickenbacker in police vehicles while on duty and in uniform; and failed to safeguard his service weapon and other department property and as a result, Lowrita Rickenbacker came to possess said weapon and property for a period of time.

Burke, represented by defendant Spota, worked out a deal to resolve the Rickenbacker Charges pursuant to a Stipulation and Agreement in which Burke accepted responsibility for his actions as determined by IAB, described as "conduct unbecoming an officer," and forfeited 15 days of accrued leave time as "punishment."  See Govt. Ex. 915(c). The documents prove that in 1995 defendant Spota negotiated this settlement on Burke's behalf and communicated both verbally and in writing with Deputy Police Commissioner Robert Kearon about the Rickenbacker Charges.  See Govt. Exs. 915(a) and 915(b).

    IAB Case 94-699 (the "Firearm Theft")

---

[3] Posillico's partner and superior, assigned to this matter, was Lieutenant Pat Cuff.

In an unrelated incident, Burke reported his home was burglarized on September 28, 1994, and a firearm stolen.  See Exhibit B.  In response to the report, IAB opened a file "for informational purposes only."

### IAB Case 99-41 (the "Prostitution Allegations")

IAB File 99-41 involves allegations that Burke was involved in a prostitution ring, more particularly, that Burke was arranging for women to have sex for money with various men, accepting protection money from the women involved in the prostitution ring, and providing the women with drugs.  This was an extremely embarrassing matter for Burke, and, at that time, Pat Cuff, the Captain of IAB, reviewed and oversaw the matter.  Ultimately, the case was closed as unsubstantiated.

### The Anonymous Letter

Also in discovery, the defense was provided with a copy of an anonymous letter (Govt. Ex. 906) sent in early December 2011, after the November 2011 election of Steve Bellone as County Executive, to several individuals responsible for selecting the new Police Commissioner.  The recipients included Kevin Law, Chairman of the Search Committee, Regina Calcaterra, the co-chair of Bellone's transition team and Newsday.  The anonymous letter, which contained a litany of bad acts alleged to have been committed by Burke, was thereafter shared with, amongst others, Richard Shaffer, the Chairman of the Suffolk County Democratic Committee and defendant Spota.  Critically, the following allegation is contained in the anonymous letter:

> When Burke was a Sergeant in the 1st Precinct, he was known to frequent prostitutes and on one of these occasions the prostitute stole his service firearm.  In an effort to retrieve the weapon, he committed at least one armed home invasion.  He was subsequently transferred out of the 1st Precinct as a result of that case.  (Emphasis added).

### Spota's Letter in Response to the Anonymous Letter

In response to the anonymous letter, defendant Spota penned a three-page letter in defense of Burke.  See Govt. Ex. 902.  More specifically, in the letter, in defense of what was clearly the Rickenbacker Charges, defendant Spota wrote the following:

> Inspector Burke's off-duty firearm was stolen among other things during the commission of a burglary at his residence in Ronkonkoma in the early 1990s.  The burglary was one amongst a series of burglaries involving forcible entry into residences.  The firearm was subsequently recovered after a 911 call involving a bar fight at a licensed establishment.  The serial

3

number had been obliterated. This is entirely consistent with the likelihood that the burglary was committed by a person(s) who resided in the Ronkonkoma vicinity and not the 1st Precinct town of Babylon when Mr. Burke was then assigned. (Emphasis added).

There is no evidence of an armed home invasion (reported incidents/credible witnesses) being committed by Mr. Burke whatsoever. Any such allegation is entirely false.

## Argument

The government seeks to introduce the three portions of Burke's IAB File detailed *supra*, the anonymous letter and defendant Spota's response for two reasons.

First, IAB File 93-152 (the Rickenbacker Charges) and IAB File 99-41 (the Prostitution Allegation) are each matters in which Pat Cuff was involved. These files are critical to help explain to the jury why, in Hickey's mind: (1) Cuff was dubbed an "enemy;" (2) Burke and the defendants undertook certain acts in 2005 in relation to Cuff's son; and (3) Burke demoted Cuff in 2012. Moreover, this evidence is necessary to explain the state of mind of Hickey and the other co-conspirators and to complete the story of the charged conspiracy. Hickey will testify that he knew of Burke's past and Cuff's involvement in the IAB matters and understood that this was the basis for Cuff's "enemy" status, a status Hickey went to great lengths to avoid, as he feared for himself and his family if he did not do as he was told in connection with the cover-up of the assault of Loeb. Finally, this evidence will demonstrate to the jury a crucial fact - that the defendants considered Burke's enemies their enemies - a fact which was well-know and understood by all police officer witnesses and critical to explain their involvement in the conspiracy.

Second, IAB File 93-152 (the Rickenbacker Charges), IAB File 94-699 (the Firearm Theft), the anonymous letter and defendant Spota's letter in response, are all significant pieces of evidence as, together, they prove that: (1) defendant Spota represented Burke in 1993; (2) defendant Spota knew full-well the details of the Rickenbacker Charges; (3) defendant Spota knew Burke admitted to the Rickenbacker Charges; and (4) in 2011, in response to the anonymous letter, defendant Spota intentionally and purposefully lied, misrepresented and misdirected the facts to protect Burke and ensure Burke was promoted to Chief of Department.

To the end, while it is clear that the portion of the anonymous letter cited *supra* referred to the Rickenbacker Charges, instead of ignoring the allegation or responding to it truthfully, defendant Spota utilized another totally unrelated incident; the theft of Burke's <u>off-duty firearm</u>, on a altogether different occasion, and lied to the head of the Police Commissioner Search Committee. It is obvious that defendant Spota did so to both protect Burke and ensure that Burke was named Chief of the Department, which of course he was, with the backing of the sitting District Attorney. In other words, this is proof that defendant

4

Spota lied and covered up for Burke.   It is compelling evidence of the lengths defendant Spota went to protect Burke and it is critical to complete the story of the charged conspiracy.   The evidence proves that defendant Spota went to superhuman lengths to ensure that Burke would be named Chief of Department, thus, when the Federal Investigation threatened to derail Burke's career, defendant Spota utilized all the significant tools at his disposal to protect Burke.   This is absolute incontrovertible evidence of Spota's state of mind, critical to refute his now defense that he believed Burke was innocent because Burke lied to him about his involvement in the assault.

In sum, this evidence is admissible as relevant to the state of mind of the co-conspirators, is critical to prove Hickey's reasons for taking actions to cover-up the assault of Loeb, is probative of motive and the close relationship between the defendants and Burke and is direct proof of defendant Spota's state of mind, motive and intent.

### Conclusion

For all of these reasons, the Court should permit the introduction of the portions of Burke's IAB File as set forth *supra*, and the anonymous letter and defendant Spota's response.

Thank you for your consideration.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:           /s/
Lara Treinis Gatz
Nicole Boeckmann
Justina Geraci
Michael Maffei
Assistant U.S. Attorney

cc.   Defense Counsel