# EXHIBITS 1-126
# REDACTED VERSION

# EXHIBIT 1



Jan. 18, 2020

The Honorable Joan Azark
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York   11722

Dear Judge Azrack:

I find it difficult to imagine the anxiety that Tom Spota, his wife Mary Ellen, and his children must be experiencing at this time.

I came to know Tom when I left the Queen's District Attorney's Office to work in the Suffolk District Attorney's Office in 1975. I worked closely with him and came to respect his ability and adherence to the law. After Tom left the office, I had occasion to interact with him in his role as a defense council. He again demonstrated those qualities that made him a credit to the legal profession. During this period of time I maintained intermittent contact with Tom since we shared many acquaintances.

When Tom was elected to be District Attorney, I was chief of the Major Crime Bureau. Tom sought my advice and the advice of other supervisory staff during the transition. It was reassuring to know that when I retired from an office I had served in for 26 years it was left in able hands. I believe that Tom accomplished many good and positive things in his tenure. I know he is now suffering from the mark that has been stamped on his professional legacy.

I would like your honor to exercise the appropriate leniency in the sentencing of Tom; a good husband, a good father, and a respected attorney.

Respectfully,

Michael H. Ahearn, esq.

# EXHIBIT 2

Dr. John Amato, Jr.

████████████████████

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York  11722

Re: Thomas Spota

Dear Judge Azrack:

I am writing you at this time so as to provide you with any supportive information concerning the character of my good friend and neighbor Tom Spota, that may not have been clear to you during his trial.

My wife and I have known Tom, his wife Mary Ellen, and their three children for approximately 37 years, essentially for as long as we have lived at our present address. I first met Tom when he and I attended a father-daughter dinner at our children's elementary school, and since then have been good friends. I can tell you that as long I've known Tom, he has always impressed me as being an excellent husband and father as he would always put his family first, engaging in many activities with his family, even when under the gun regarding his professional work load, especially when developing his law practice. As a dedicated attorney Tom has always been well respected and loved by his colleagues and most importantly by his many friends. I know this first hand as some of his friends are also friends of mine, and as result I would frequently hear stories about how Tom was always available to help his friends whenever he could. And as Tom's law practice grew, so did the number of individuals who Tom was always ready to provide assistance and guidance to, whenever necessary.

My wife and I unfortunately experienced a first-hand account of Tom's commitment to his friends when ████████████████████ after joining the local fire department. As soon as we returned home from ████████████████████, my friend Tom came over to see what had happened, and we cried together! This is the type of man Tom Spota is. A good example of his dedication to his profession, was when Tom was the Suffolk County DA, and at that time had indicted a number Catholic priests for child molestation. Even though Tom is a practicing Catholic, he did not let that dissuade him from doing what he knew was right, and for that, unbeknownst to Tom, he was publically thanked by a priest at a Sunday Mass that Tom was attending, and was given a standing ovation!

Please know that Tom Spota is truly a decent and kind man, and please understand how this horrible situation has taken its toll on him and his family, especially his wife Mary Ellen. I know this because I see Tom and his family at least once per week as they live directly across the street from my wife and me.

Your honor, I ask that you please consider all that I have presented herein that speaks to the positive aspects of Tom's character, as well as the many important accomplishments that Tom has achieved in his career that have had a positive impact on his family and friends, as well as the people of Suffolk County. I respectfully request that you consider all that I have provided you regarding the positive attributes of this man's character` in helping you to deliver as lenient a sentence as possible.

Respectfully,

John Amato, Jr., EdD
Associate Professor
Department of Communication Sciences
and Disorders
Long Island University/CW Post Campus

Clinical Assistant Professor of Surgery
Stony Brook Southampton Hospital
Southampton, NY

# EXHIBIT 3

John Ammerman

January 26, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York  11722

Dear Judge Azrack,

Please accept this correspondence on behalf of Thomas Spota.

I am a 63-year-old semi-retired attorney who has known Thomas Spota for over 30 years.
Briefly, my background is as follows.  I started my legal career as a legislative assistant to the
N.Y.S. Senate while attending college and law school in Albany, New York.  Thereafter I was a
prosecutor in the Suffolk County District Attorney's office for six years.  In 1988 Tom offered me
a position as an associate in his law firm.  Later I become a partner.  Simultaneously, in 1988, I
took a faculty position at Suffolk County Community College (SCCC) as coordinator of the
Paralegal Program.  In 2015 I retired from my full-time position at SCCC and was recently given
the honor of Professor Emeritus.

Working closely with Tom on a daily basis at the law firm gave me a unique vantage point to
observe his character.  During the daily triage of running a busy law practice the moral fiber of a
person cannot be hidden.  Both good and bad.  At no time did I _ever_ observe a lapse of ethics or
integrity by Thomas Spota.  Quite to the contrary, I always observed a consistent and
unwavering probity and principled integrity in all his actions.

Tom taught me by example to vigorously advocate for a client but to never cross the line
ethically.  I will never forget one of my earliest cases with the firm.  I was a young lawyer eager
to show I could bring in good cases.  It was a criminal case that would have generated a
substantial fee. However, among other things, the defendant brought in witnesses that were
clearly lying.  I was very uncomfortable with the situation.  I went to Tom for advice.  He told
me two things should guide my decision.  First, no case is worth jeopardizing my license to
practice law.  Period.  Second, I must be comfortable from both an ethical and moral standpoint.
Tom explained there is a line in the practice of law that must not be crossed.  The ethos of our
profession is clear - zealous representation of a client is expected, but do not compromise your
integrity nor jeopardize your reputation.  Ultimately, I did not take the case.  Tom totally
supported my decision and by so doing taught a young lawyer a valuable lesson.

A somewhat related example was Tom's advice to me concerning matrimonial cases. After handling a few matrimonial cases I went to Tom's office and requested that someone else handle them in the future.  For a variety of reasons, matrimonial cases were not right for me. Again, I was a young lawyer trying to prove my mettle in the firm and was quite uneasy going to Mr. Spota with this request.  He could not have been more supportive and instructive.  He explained that the practice of law is a complicated and stressful undertaking.  If I was not comfortable with a specific area of the law, let someone else handle it.  He emphasized the need to be principled and true to one's self with all aspects of the practice of law.  Yet another lesson for a young attorney.

A third specific item I would like to mention is Tom's teaching at SCCC as an adjunct.  Tom taught a number of law classes at the college.  To be blunt, teaching at SCCC as an adjunct is not a lucrative endeavor.  Especially so for Tom as the senior partner in a very busy law firm. However, Tom wanted to teach for the right reason, which was to give something back to the community.  He wanted to share his knowledge, appreciation and respect for the law with students, with the hope of instilling similar feeling in them. His motive was pure and altruistic – give something back to his local community.  Which he did.

I could go on with many more examples of Tom's good character and reputation.  However, I know the Court's time is valuable.

Instead, let me simply conclude by saying I have no personal knowledge of the circumstances and alleged conduct in the case before the Court.  It is difficult for me to even imagine they are true.  I can only say the allegations are totally inconsistent from anything I have ever observed from Tom Spota.  They are a complete aberration from anything I have seen during the past 30 years I have known Tom.  I cannot stress this point more emphatically.

I would ask the Court to take into account Tom's countless good deeds that will no doubt be brought to the Court's attention.

As with a good book, the measure of a person should be based on all the pages of that person's life – not solely on one lamentable chapter.


Respectfully,

John Ammerman, Esq.
Professor Emeritus, Suffolk County Community College

# EXHIBIT 4

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack,

I have tremendous respect for your Courthouse, your responsibility to this community, and the decision that you have on the future of Mr. Spota. I write this letter anonymously because over two decades after a troubled past, my case was sealed. Today, many important people in my life are not aware of this past. But, the fact is Tom Spota saved my life.

I grew up in a lower-middle class family and lived a normal childhood. If applied myself, I could have been a scholastic student, but instead, I focused on playing sports. I was the class clown cutting class to smoke cigarettes. I was never violent, simply misguided and not properly supervised.

When I was in high school my parents got a divorce. My father moved out and my mother was crying at night and working during the day to keep food on the table. My self-esteem plummeted. Since my father was no longer home, and my mother too busy dealing with work and her world of hurt, I began staying out late each night raiding the liquor cabinets at friends' houses, and eventually starting to smoke marijuana.

After high school, I began experimenting with other illicit drugs and ultimately, found myself in trouble coming up against the Rockefeller Laws. I felt hopeless as I faced multiple felonies and significant jail time.

Mr. Spota is the person that gave me a shot. At the time I was most in need of help, help that some argued I didn't deserve, Mr. Spota did not take the easy route. He pushed boundaries against a society that condemned young people hurting from drug addiction and advocated for alternative treatments to incarceration. He did not quit on me, and he is the reason I am able to write this letter.

Through the blessing of the Coulis and the work of Mr. Spota and others, I was afforded a groundbreaking alternative treatment. Instead of jail, I was able to live in a program called Hope House where I took classes and graduated college. I learned what it took to work hard and gained the tools necessary to earn a living and to be a family member again.

Today, I'm a Partner at a national CPA firm. I am blessed with a wife and a child. I have founded a public foundation that has provided hundreds of thousands of dollars to people in need.

Without the opportunity Mr. Spota provided me, I would probably still be in jail, or worse.

Thank you for taking a few minutes to read my story, which is why I respectfully ask that Your Honor show mercy to Mr. Spota.

Respectfully,

Anonymous 1

# EXHIBIT 5

February 2, 2020

The Honorable Joan M. Azrack, U.S.D.J.
United States Courthouse
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Your Honor:

I submit this letter to you for your consideration in determining the appropriate sentence for Mr. Spota. I have chosen to submit this letter to the Court anonymously as the facts which give rise to my case are sealed. To the extent the Court would weigh this letter more heavily in Mr. Spota's favor if it was not signed anonymously, I am happy to appear in Chambers ex parte and under seal to reveal my identity to the Court.

Approximately 20 years ago, I got involved with the wrong crowd in High School and made poor decisions involving drugs. At the time, New York had not amended and reformed the draconian Rockefeller drug laws, which would have required a significant prison sentence for a person situated as I was. However, as a result of Mr. Spota' s progressive and compassionate-minded philosophy as the Suffolk County District Attorney, I was given the opportunity to complete an alternative to incarceration program instead of serving a prison sentence.

This program, known as Hope House, gave me the necessary structure to turn my life around. While there, I was able to complete my undergraduate degree before moving on to attend and graduate from law school. Today, I am gainfully employed as an attorney in good standing in the State and Federal Courts of New York and have been for the past near decade. As a result of this second chance at life Mr. Spota gave me, I am also happily married and able to enjoy my family.

Over the years, I have had the opportunity to see Mr. Spota and would update him on my life. I can recall seeing the happiness in his eyes when he heard how well I was doing. It was clear he took a genuine interest in my well-being. Put simply, if it were not for the risk-taking compassion that Mr. Spota showed me years ago, I may not be the person I am today. I have also witnessed Mr. Spota show others the same compassion he showed me. For these reasons, I believe compassion should be shown to Mr. Spota today. His second-chance approach to criminal justice is something that should be embraced by all District Attorneys and Judges where appropriate.

Please feel free to contact Charles Russo, Esq. if the Court requires any additional information.


Respectfully,

/s/

Anonymous #2

# EXHIBIT 6

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack,

I have lived at Hope House for three years. During this time I have seen countless individuals come in desperate, broken and often in lieu of jail, but are able to grow, better themselves, get their life back and most importantly help others. Hope House helps so many people reclaim their life from addiction and substance abuse. There are countless success stories. I was not mandated by the courts to go to Hope House, but many of my friends were. In fact, some of the strongest, kindest, and most influential people in my life were sent to Hope House by Mr. Spota. He has positively impacted so many lives by offering individuals in the system the option of recovery in lieu of jail. Mr. Spota has been instrumental in changing people's lives on Long Island for the better over the years.

Respectfully,

Anonymous 3

# EXHIBIT 7

January 15, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Re: Thomas Spota

Dear Judge Azrack:

Tom Spota's accomplishments as District Attorney are significant and I know the community is grateful for all he has done during his service. Rather than discuss his professional accomplishments, however, I would like to focus on his character and humanity.

I have known Tom and his wife Mary Ellen for over 20 years. We spent many hours together playing tennis and have enjoyed each other's company at dinner from time to time.

In my experience, in the relaxed, but often tense, excitement competing on a tennis court you learn things about a person that otherwise may not be apparent. Playing tennis with Tom, I have always found him to be levelheaded and honest. He's a good sport; and shows good will towards the other players, even if you are his partner and messing up. He plays hard, doesn't give up easily, and always has a sense of humor. I have known Tom to be the type of person you would be proud to call a friend on or off the tennis court.

Two years ago ███████████████████████████████████████████████████████
████████████████████████████████████████ Tom reached out with tremendous kindness and arranged to spend time with him in friendship. While many avoid those with disabling conditions, I know Tom to be compassionate and able to readily treat people with kindness and respect.

Tom is also ready and willing to offer help. When ███████████████████████████████████████
█████████████████ Tom offered and spent his time █████████████████████████████
████████████████████████████████████████████████

Without reservation, Tom Spota has my highest personal recommendation. I respectfully ask for Your Honor's careful consideration to show him as much leniency as possible.

Respectfully,

*Diana Antos Arens*

Diana Antos Arens, Ph.D.

Executive Director and Co-Founder (Retired)
Options for Community Living, Inc.

# EXHIBIT 8



March 4, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11772

Dear Judge Azrack:

RE: Thomas Spota

I am writing this letter on Behalf of Thomas Spota, a person that I have known for at least the last thirty five years, both professionally and socially.

Please let me explain that I first met Tom when I was a fledgling Probation Officer; newly hired but anxious to learn. Although Tom may not even remember this, at that time, the officers were part of a non-law enforcement union and we were anxious to break-away and establish our own union. Tom generously offered to help us without any thought of salary or payment. His suggestions and expertise helped in our becoming the Suffolk County Probation Officers Association where I subsequently served as Vice President.

As my career advanced, I had many opportunities to get to know Tom as a person and friend during the eighteen years that I served as President of the Suffolk County Police Department Columbia Association. He became a member himself but was called upon many times to assist us and became our Man of the Year at our annual golf outing. Further, during my career as an officer, I had many instances of having contact with Tom, first while he was an attorney representing his clients, and later as Suffolk County District Attorney while I was assigned to the Pre-Sentence Investigation Unit completing high profile felony cases. Tom was always a telephone call away if I had any questions and despite the fact that he was busy, he would be willing to meet with me and share any information needed to complete the report.

I know Tom as a family man; a husband and loving father. He is a kind and decent man. I know that the legal matter at hand is taking a toll not only on him but his family as well. He is not a young man and I fear for his health and that of his wife.

I consider Tom a mentor to me and I must mention that the person I know is one worthy of leniency.

If you need any further information about Tom, please feel free to contact me at

Respectfully,

Gilda Avram

# EXHIBIT 9

February 3, 2020


The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York. 11722

Dear Judge Azrack:

I am writing to ask for leniency for Tom Spota. I wish to tell you a little about myself first
and then why I feel Tom Spota deserves leniency in his sentence.

I am 75 years old.  In 1970 I had completed my studies for the Catholic priesthood.  For
various reasons I decided I did not want to get ordained as a priest.  I did stay connected to
the church as I spent 15 years teaching Bible scripture courses at numerous parishes on
Long Island and at St. Joseph's College in the religious studies department, where I am still
working.  In 1985 a good friend of mine, Reverend John Cervini, who was then the pastor
at Our Lady of the Miraculous Medal, asked me to start up a non-profit agency that would
help the homeless.  He had a small group of people who were interested in creating this
agency and thought I had the skills to make it happen.

So in 1985 I began my work as Executive Director of Wyandanch Homes and Property
Development Corporation.  I realized right away that I needed an attorney to help us and at
the time we had no funding.  That is when I met Tom Spota, who was also a friend of John
Cervini.  Tom did not hesitate to join us and his service was critical.  He began by helping
us to establish our 501C3 organization and then assisted me in developing and reviewing
state, county and town contracts to secure properties and develop housing.  Tom was always
available to assist me and direct me through the legal maze.  I spent a good deal of time at
his office in Hauppauge and he even met me in the Bronx one Friday afternoon when we
were having problems with New York State Department of Housing and Community
Renewal regarding property transference.  He never tired of using his expertise and talents
to solve the most complicated problems and negotiations.  WHPDC would not have made it
without Tom's help.  When he became District Attorney of Suffolk County I thought he
would have to resign from the WHPDC Board because he could not possibly have the time
to help us anymore.  He made the time; he went the extra mile and stayed on the board until
I retired in March 2011.

With Tom Spota's help WHPDC built 21 houses and renovated 4 houses.  Tom was
involved with the property transfers, closings and funding.  He also played an active role in
interviewing the families who came to us for help and helped me assist families who were
facing difficulties in court.  Over the years we worked together with 96 families and
provided housing for them as well as services to aid them in becoming economically self-

1

sufficient. I have attached the last report I presented to the board before I retired so Your Honor can see all that we accomplished. WHPDC continues to provide housing and aid to help homeless families. I am asking that Tom's care and commitment to help the homeless in Suffolk County be considered when you determine his sentence.

Because of Tom's help, I was able to help to create a coalition, presently called Long Island Coalition for the Homeless, which brings in over 10 million dollars annually to benefit programs which provide services and hope to the homeless of Long Island. Without Tom's help, I would not have had the time to help to develop this coalition.

Thank you very much for your kind attention to my plea.

Respectfully,

Peter Barnett

Peter Barnett

## WYANDANCH HOMES AND PROPERTY DEVELOPMENT CORPORATION
## IMPACT REPORT

Wyandanch Homes and Property Development Corporation began in 1985 and in 1987 moved their first family out of a shelter and into an affordable rental WHPDC house. As of 2011 96 families have completed the WHPDC program moved out of the WHPDC program and moved into permanent housing.

5 adults have received their Bachelors degree
7 adults received their Associates Degree
6 adults completed 2 semesters of college
1 adult completed one semester of college
1 adult completed her RN Nursing Program
1 adult became a Licensed Practical Nurse
16 adults received their GED
18 adults completed job training and received certificate
82 adults were employed when they left the WHPDC program
6 families bought a home of their own

We now have 25 families who are living in the WHPDC houses and working toward economic self sufficiency

6 Adults are in college
9 adults are in GED preparation
8 adults are employed
2 adults are in BOCES Vocational Training
2 adults are in job search
77 children are attending school or are in daycare

Each year WHPDC provides assistance for over 200 individuals who are either on public assistance or who have a very low income. WHPDC advises on issues of personal financial problems, housing, education and provides counseling services for families who are homeless or at risk of becoming homeless.

(updated March 22, 2011)

# EXHIBIT 10

Charles Bartels



2/10/20

The Honorable Judge Joan M. Azrack
United States District Court Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack:

I am writing to ask for leniency when Thomas Spota stands before you for sentencing.

I knew of Tom Spota since my early days as a Police Officer in the Suffolk County Police Department, but I didn't really meet him or get to know him until he became District Attorney for the County of Suffolk. During my almost 39-year career I had the privilege of being assigned to the District Attorney's Bureau for more than 30 years as a Detective.  During this time, I served under four different District Attorneys in a wide variety of roles, mostly investigating traditional and nontraditional organized crime.

When Tom Spota began his term, I was a member of the Rackets Bureau and assigned to the Special Operations Team, a unit that consisted of six detectives and one Sergeant. I was directed to concentrate on Labor Law crimes, and that assignment led to the formation of the Labor Law Unit, a new unit within the District Attorney's Section. Tom Spota wanted to level the playing field in the labor force and stop the abuse of workers by dishonest contractors, vendors and public officials. Tom Spota was responsible for an amendment to the New York State Labor Law, that became known as the Spota Law, to protect workers who were being victimized. Prior to this being signed into law, a worker who was not paid for work performed had no meaningful remedy because failure to pay wages was an administrative violation. This was a major issue for the immigrant work force because the contractors knew the workers had nowhere to go and complain. The law made it a crime to not pay or underpay workers and followed a scale similar to the larceny penal law violations. It also strengthened the prevailing wage laws and increased the criminal liability of unscrupulous contractors and municipal employees who turned a blind eye to the abuse.  During the tenure of Tom Spota, the Labor Unit recovered on average over a million dollars a year from contractors and returned between 15 and 20 million dollars in lost wages to hundreds of workers, regardless of their social status.

I have been in the company of Tom Spota at dozens of labor-related events when he was asked to speak or received awards for his unrelenting support of labor, and was amazed how down to earth he was and

The Honorable Judge Joan M. Azrack
2/10/20
Page 2

how comfortable he was sitting and talking to workers, labor officials and contractors. He always gave
credit for the work being done to the investigative staff and Assistant District Attorney handling the
cases.   Of the three District Attorneys who investigated labor law violations, Tom Spota was the only
one who really cared about the workers and tried to stay abreast of the unit's activity.

I am proud to have worked for Thomas Spota and will offer any support I can to him and his family
during this difficult time. Again, after working for four different administrations in the District Attorney's
Office, I can attest to the fact that Thomas Spota is one of the most honorable, loyal and caring men I
have met or worked for. He is a deeply religious man and totally committed to his wife, children and
grandchildren.  It is my hope that Your Honor will consider all the good that Tom Spota has done for so
many people over the years when you sentence him.  In addition to being proud to have served under
him, I am extremely honored to consider him a friend.

Respectfully,

Charles Bartels

Charles Bartels

# EXHIBIT 11

6 Jan '20

Dear Judge Azrack,

I wrote today on behalf of my long-time friend Tom Spota. We actually worked together in the Criminal term of the Suffolk County Court in 1981 & '82. He was then a leading prosecutor & I was on of two dozen Senior Court Clerks (JG-21).

Several years later, I joined the staff (JG-25) of the District Administrative Judge & my duties involved regular contact with Tom at Bar Assoc. activities as he pursued private practice. He enjoyed a sterling reputation, as I would expect of a fellow Chaminade H.S. graduate & Marine Corps reservist, like myself.

During my tenure as Chief Clerk VI of the Family Court for 7 years, and the last 12 years ('90-'02) as Chief Clerk VII of the Suffolk Supreme Court, I often recommended his office as one of the top Suffolk firms when folks asked for 3 names.

In my direct knowledge of Tom, he is a solid family man, a good Catholic & has been a credit of his family & his profession. As to the revelations at your trial, I can only say the main protagonist, who pled guilty to

– 2 –

Azrack

           avoid
to avoid trial + detailed embarassment.
lied to Tom from day 1.
      I believe there is a good reason Lady
Justice is blindfolded. Those of us who
have toiled in the the Courts + the Criminal
Justice for decades know, we must
balance the Rule of Law with compassion!
      For 17 years as an adjunct proffesor
at LIU - Post, I tried to impress on my
undergraduate + graduate (some already were
supervisors) students that their efforts
could bring a significant difference when
knowledge, understanding + a degree of
compassion can go a long way
      As I have done twice in the
past with your colleague Mike Orenstein +
Denis Hurley, I write directly + most
respectfully ask you to consider my remarks
in passing sentence on Tom.

                Very truly yours,

                Robert Bennett

# EXHIBIT 12

# Our Lady Of The Miraculous Medal Church

1434 Straight Path
Wyandanch, New York 11798-3909
(631) 643-7568    Fax (631) 643-5935    e-mail ███████

--- + ---

To <u>Believe</u>, To <u>Belong</u>, To <u>Be Compassionate</u>          <u>Creer, Compartir, Ser Compasivo</u>

February 5, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack:

I am the Rev. William F. Brisotti, pastor of Our Lady of the Miraculous Medal Roman Catholic Church, Wyandanch, New York 11798, for almost 21 years. We are part of the Diocese of Rockville Centre.

I am writing this letter on behalf of Mr. Thomas Spota, who has served for many years, both before and during my years as pastor, as a volunteer legal adviser in helping to guide our parish's social service outreach to the people of our racially and economically challenged area of Suffolk County. He has always been extremely generous with his time and professional expertise, and has positively affected the lives of our people enduring difficult situations.

I am also proud to be able to call Tom Spota a friend.

I understand that he is facing sentencing, and would hope that the Court be as lenient as possible, so he may be able in some way to continue helping needy people, which would be of great benefit to them and also is something that Tom is well-equipped to do.

Respectfully,

Rev. William F. Brisotti,
Pastor

Our Love Makes Miracles

# EXHIBIT 13

**TERRENCE P. BUCKLEY**

Attorney At Law

356 Veterans Memorial Highway

Suite 3

Commack, New York 11725

(631) 543-3030 • Facsimile (631) 543-2888

January 30, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack:

I have known and dealt with Tom Spota throughout his tenure as Suffolk County District Attorney and found him to be highly professional and a "straight shooter".

When he was in private practice, I cannot help but recall his kindness in helping me when I was on trial in a medical malpractice case and felt overwhelmed. His thoughts and words of encouragement brought me back into focus, resulting in a substantial verdict for my client.

I trust that Your Honor will take into account a life filled with positive influence and fashion a sentence that is as lenient as possible.

Respectfully,

Terrence P. Buckley, Esq.

TPB/ci

# EXHIBIT 14

January 20, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack:

We have been next door neighbors to the Spotas for over 47
years, sharing family events - new babies, first Communions,
graduations, weddings, and the next generation of new babies
born into our lives. Tom has been a fine neighbor and it has
given us a sense of security to know that he is there for us.

Tom always showed an interest in each of our children as
they grew up. Our son received a great deal of support from
Tom when he made the decision to attend Fairfield University
(Tom's alma mater). Our daughter, now 53, continues a close
relationship with the Spota family. She remembers Tom as being
very positive and encouraging to her, especially through her teen
years.

Twenty years ago, when my ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and I
was home alone, I saw a woman approaching our front door, but
when I came to the door, she was gone. It had been a very
anxious day for me and this unsettled me greatly. I called Tom
and told him about the woman. He was very calm and reassuring
and told me he would look into the situation. The "intruder"
turned out to be a LILCO meter reader (who had been in running
clothes and without an ID badge). I was immensely relieved and
very grateful to Tom for his help in clearing this up so quickly.

Several years ago, a friend of ours ███████████

████████████  I asked Tom for advice and he immediately contacted a local lawyer who did all that was needed - pro bono - for our friend. We were all grateful for this timely help.

For all the years that we have known Tom, our family has regarded him with trust and respect - we still do, and always will.

Respectfully

Damiano Buffa

Helen and

*Helen Buffa*
*Damiano Buffa U.S.*

# EXHIBIT 15

**John L. Buonora**

The Honorable Joan M. Azrack
United States District Judge
United States District Courthouse
100 Federal Plaza
Central Islip, New York 11722

January 17, 2020

Re: Thomas J. Spota Sentencing

Dear Judge Azrack:

I am an attorney and past president of the Suffolk County Bar Association. I have also had the honor of serving as Tom Spota's Chief Assistant District Attorney for almost nine years, from January of 2002 until my retirement in August of 2010.

Presently I serve as an adjunct professor of law at Touro Law Center, supervising the Criminal Prosecution Clinic where we educate students who have an interest in careers as prosecutors. In our program we emphasize ethical behavior and professionalism.

Of greater significance than the above is that my wife Toni and I have known and been friends of Tom and Mary Ellen Spota for over 45 years, since the time that Tom and I were fledgling assistant district attorneys in the 1970's. We have attended each other's family and social events over the years. In the intervening years from the 1980's until 2002 we each separately practiced law in the private sector.

I did not attend Tom's trial but only read newspaper accounts and would not comment on the verdict or the evidence in the case other than to say that what I read or heard is not the Tom Spota that I have known for over 45 years.

I have known Tom to be a compassionate and dedicated public servant who has cared about the people that he has served for many years. Perhaps one of his most significant achievements having a positive impact on so many people was his investigation of child abuse by clergy and its cover-up by the Roman Catholic Diocese of Rockville Center. That investigation and the Grand Jury report that followed was one of the first of its kind in the nation and had a significant beneficial effect on so many of the people whose lives had been affected by that scandal.

1

Another thing that stands out for me during the time that I served as Tom's Chief Assistant was the compassion that he exhibited for many individuals that he prosecuted. This was particularly evident during the many public corruption cases that he prosecuted during his tenure as District Attorney. Tom would never gloat or grandstand over an indictment or conviction but rather was keenly aware of and agonized over the impact that his actions would have on the careers, reputations and livelihood of the people he prosecuted, including the incarceration of people in public life.

It is a bitter irony that he now finds himself having to now ask a court for mercy. I have spoken to Tom and we have exchanged correspondence since his indictment on several occasions. I have always known him to be a strong and courageous person who never shrank from adversity but I can see how this prosecution and conviction has taken a tremendous physical, mental and emotional toll on Tom, Mary Ellen and their children. He and I are the same age and I cannot begin to imagine the terribly frightening prospect of a prison term at this stage of life.

Tom has always been quick to reach out to friends in times of need, whether it be to keep apprised of the condition of my ▮▮▮▮▮▮ or after my retirement checking on our family after Super Storm Sandy, which had devastated our south shore neighborhood.

As District Attorney he has shown a special compassion and accommodation to staff members battling cancer or other family crises. One example is that of an assistant district attorney who was ▮▮▮▮▮▮▮▮▮ (I will not name her out of respect for her privacy). Among other things, Tom would arrange for files to be shuttled between the office and her home so she could continue working (which she wanted to do) while recuperating from her surgery.

Another example of Tom's compassion is that of a young junior assistant district attorney, ▮▮▮▮▮▮▮▮▮▮▮▮ who suddenly and unexpectedly died. ▮▮▮▮ had only been in the office for a few months at the time of his death. His dream had always been to become a lawyer and an assistant district attorney. Tom arranged, with the help of then-Presiding Justice of the Appellate Division A. Gail Prudenti, to have ▮▮▮▮ admitted to practice posthumously.

I know of other examples of how Tom has positively affected the lives of others but will leave to them the telling of their own experiences.

Thank you for considering this letter and the positive impact Tom has had on so many lives.

Respectfully,

John L. Buonora

# EXHIBIT 16

The Honorable Joan M. Czrack
United State District Judge
United State Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack,

I certainly appreciate this opportunity to speak to you about my friend, Tom Spota. I've known Tom since my early twenties; I'm 75 now so that's a long time. Tom married my dear friend, Mary Ellen, and I was a bridesmaid at their wedding. One thing that impressed me at once was Tom's dedication to his belief that it was very important to contribute to ones community. He was a voluntary fireman in Garden City Rose, and later in eastern Long Island. He also appreciates loyalty and has been a meaningful friend throughout the years.

████████ for many years and Tom and Mary Ellen have visited me often. In fact even though they are going through a trying time, they recently visited and Tom didn't talk about himself, but rather, he concentrated on how I was feeling.

The Spotas have a very close family. They keep their children and grandchildren in many ways, as they always have done. I respect Tom for being so dedicated and giving and urge your honor to consider the good he has done in life and give him as lenient a sentence as you can.

Respectfully,
Susan Cahill

If you have any questions concerning what I have written please contact me by phone ████████ as we do not text. Thank you.

# EXHIBIT 17

The Honorable Joan M. Azrack                                    February 5, 2020
United States District Judge
United States Court House
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack:

Tom Spota is a friend of mine. I met Tom when he moved into the neighborhood about
47 years ago.

He and Mary Ellen have three children; the first two are the same age as our two. The
children were in the same grades and classes from kindergarten through high school.
Therefore, besides socializing, I would see Tom at children's parties, sporting events,
school activities, and just around the neighborhood where we would chat about life and
the world we live in. I can tell you that Tom was a great husband, a great father, a great
neighbor, and a great person. He is level headed, very concise in his thoughts, and has
a very moral slant to his ideas. He was fun to be around.

While I am not involved with law enforcement, I was always impressed with Tom's love
of the law and justice. We would talk on occasion about his work. He seemed to be a
dedicated prosecutor and defense lawyer. Tom had a passion for what was right and
for the legal system. I believe he would always do whatever was right in the eyes of the
law.

Several months ago, my wife Pat and I decided to empty the garage storage space of
almost 50 years of "treasures". We hired some people to bring everything down from
the rafters, rented a 10 yard dumpster, and began tossing many of these ancient
treasures. I guess we were making quite the racket because Tom and Mary Ellen came
up the driveway to see what was going on. We had a good laugh about all these
wonderful memories that were being tossed into the dumpster, and of course we talked
about the kids and the grandchildren. It was like the good old days!! After about twenty
minutes, Tom and Mary Ellen left us to the work at hand. As they slowly walked hand
and hand back down the driveway, I wondered just how much more this once vibrant
couple could endure.

Thank you for this opportunity to write a few words about the Tom Spota I know. I pray
that Your Honor will be merciful and lenient in your final decision.

Respectfully,

Leonard Calone

Leonard Calone

# EXHIBIT 18

January 31, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack:

I am writing on behalf of my good friend and neighbor, Tom Spota. I have had the pleasure of knowing Tom for 46 years. During those years, as our children grew, our families spent many hours together. We celebrated the milestones of life – Baptisms, Confirmations, graduations, weddings. I smile when I recall trekking through the neighborhood Trick or Treating with Tom and the kids, or the camaraderie of the neighborhood Egg Hunt.   More recently we have enjoyed reminiscing about those fun times at the annual neighborhood gathering.

Throughout all of those years I witnessed Tom to be a hardworking, dedicated, caring, kind, and generous man.   In our neighborhood of 27 houses, Tom is highly respected. His devotion to his profession and commitment to serve have always been so evident.  Since he was a young ADA Tom has been the "Go To" person when someone had a problem or needed some advice or help.

In 1996, as my dad was advancing in age, Tom was very kind to him and helped him navigate the myriad of choices and decisions he needed to make regarding his care. My dad sensed Tom's genuine caring for him and that meant so much to a worried and elderly man.  Another neighbor,          , found such comfort in having Tom nearby                       . She voiced that sentiment and her appreciation again and again.  Tragically, in our small neighborhood, we lost two of our young people to car accidents.  Once again the parents sought and found comfort in Tom's support.

Helping those in need is second nature to Tom Spota.  It is who he is, always has been, and will always be.  I believe he is a good man who represents the best in humankind.

Tom's devotion to his wife of 50 years, Mary Ellen, and his children, Tom, Kate and Patty has been unwavering. Now that he is finally a grandpa, he beams with pride at mention of the 5 little ones, all under the age of 6, and they adore him.

As the sentencing is approaching I am more and more concerned about the health and wellbeing of Mary Ellen and Tom. At 75 and 78 years of age they have endured tremendous stress, and that has certainly taken a toll on them. I am sincerely hoping that the many years of distinguished service Tom has devoted to people of Suffolk County, and the pain that has already been endured, will be considered at the time of sentencing.

Respectfully,

Patricia Calone

Patricia Calone

# EXHIBIT 19



*United Investigation Service*
*of Greater New York, Inc.*

LICENSED PRIVATE INVESTIGATION

P.O. BOX 397 • BABYLON, NY 11702

(631) 321-1440
TWENTY-FOUR HOURS
FAX: (631) 321-1522

February 1, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Court House
100 Federal Plaza
Central Islip, NY 11722

RE: Thomas Spota

Dear Judge Azrack:

I am Gregory Carey, Retired Detective (1/26/90) from the Suffolk County Police Department. I served in the Rackets Bureau from 1977 to 1990, at which time I retired. I am also President of United Investigation Service of Greater NY, Inc., which I started after police service to the county.

As a young Police Officer, I had the opportunity to meet Mr. Spota professionally during the course of business. While I never socialized with him, I did have occasion to speak with him frequently regarding various investigations that were of interest to both of us. I have always found Mr. Spota to be a great advocate of law and order and a mentor as well. For a young cop as I was, I always felt like I received good advice that was well within the rule of law. I always felt confident that I was moving in the right direction with the particular cases that I was assigned to. For me, it was a nice feeling to have someone of Mr. Spota's caliber, having the same interest in law and order and the cases that were being investigating at the time. As I moved along in my position, if any of the younger cops had any questions, I always felt that they would get the proper direction if they spoke with Mr. Spota.

I can only imagine the hardship this trial has caused the Spota family, especially taking into consideration the factor of Tom's age. I only wish him and his family any favorable consideration that could be afforded him.

Thank you for allowing me to present this letter on Mr. Spota's behalf.

Respectfully Submitted,

Gregory T. Carey/President
Ret. SCPD Det.
www.unitedinvestigationsny.com

# EXHIBIT 20

**JOANNE S. CARR**

███████████████

January 27, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip NY 11722

Dear Judge Azrack:

Tom, my older sister Mary, and I grew up in a modest home in New Hyde Park. Our parents instilled in us the values of faith, hard work, discipline and education. Both our mom and dad worked outside our home, and we were latchkey kids. Their goal was to save enough to send all of us to college. They succeeded.

Following high school, Tom attended college in Connecticut. He returned home after graduation from college and attended St. John's Law School in Jamaica, NY. I remember his commuting to law school with Eileen Burke, a young woman from our parish. He and Eileen studied together and encouraged each other in their pursuit of a law degree. Never was there any discussion of why Eileen would chose this field of study or doubt about her capability to succeed in what was then predominantly a man's profession. Tom was a man ahead of his time in recognizing the ability of women to compete and achieve in a male dominated field.

After my mother's death in 1968, Tom never hesitated to give full support to our dad, despite his hectic work schedule and his own duties as husband and father. He and Mary Ellen, his wife, were selfless in helping my father adjust to widowhood.

As he progressed in his career in the DA's office, his family grew. His office responsibilities increased, but Tom's first priority was always his family. He and Mary Ellen raised three children who have grown to become wonderful, hard-working adults with families of their own. Even with the responsibilities of work and parenthood, Tom was able to stretch his time to help his college friend, Fr. John Cervini, in his efforts to help homeless women in his parish in Wyandanch. Only recently did I become aware of Tom's hard work in this area. Tom was also a great help to Fr. Frank Pizzarelli in his work at Hope House Ministries in Port Jefferson. Hope House is a haven for people with addictions. Tom's assistance was not public knowledge. My brother has always been a modest person who does not boast about his efforts to help people in need.

Tom has never sought the spotlight, and he has remained true to his family and friends. Two of his grammar school friends from New Hyde Park are even now his oldest and dearest friends. He has, of course, made multiple friendships over his lifetime, and he values these relationships greatly.

████████████████████████████████████ I found
my brother to be both empathetic and understanding.  Tom has given moral support to my
███████████████████████████████████.  This, I believe, reflects the
excellent values he instilled in his children.  It has meant the world to me.

Tom's willingness to help others has been evident to me throughout my life.  He is a man
of high moral character, and I hold him in high esteem.

Respectfully,

*Joanne S. Carr*

Joanne S. Carr

# EXHIBIT 21

**MATTHEW J. CARR**

January 27, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip NY 11722

Dear Judge Azrack:

I have known Tom Spota for over 45 years.  I married his sister Joanne.

Over these many years we would attend holidays and summer barbeques at Tom and Mary Ellen's house. They were always happy occasions. Tom, a regular person, would be barbecuing for everyone, always asking if anyone needed anything. As the family grew, Tom became father to Tom, Kate and Patty. He was always involved with them growing up.  Now that they are all married and have young children, Tom and Mary Ellen are caring grandparents.  They all often vacation together during the year.

My wife and I are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ We spoke to Tom about it. The first thing he said was that he would go there and get a good attorney to represent ▮▮▮▮▮▮ before Tom could even fly out west. But this shows how much Tom was willing to go out of his way to help us.

Beside his devotion to his immediately family, Tom was also a kind and attentive son to his father, who suffered from ▮▮▮▮▮▮▮▮▮▮▮. On numerous occasions he was called to his dad's residence to assist ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These were stressful times for him because he worked long hours in the District Attorney's office. He never complained about the situation or burdened his sisters with these occurrences until much later.

I'm proud to have Tom as my brother-in-law and to be part of his family.

Respectfully,

*Matthew J. Carr*

Matthew J. Carr

# EXHIBIT 22

### St. John the Evangelist RC Church

546 St. John's Place   Riverhead, NY 11901

Phone: (631)727-2030   Fax: (631)369-5228

January 18 , 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York, 11722

Dear Judge Azrack,

My name is Msgr. John I. Cervini, a personal friend of Tom Spota's for 62 years. We became high school friends attended Fairfield University in Connecticut together, and graduated as members of the Class of 1963. As a good friend, and a good man, I always found Tom to be quite authentic, compassionate and prophetic. His inner and outer life were in sync.

As an authentic man, I will never forget him informing me when he just found out that the girl of his dreams, Mary Ellen, ███████
████████████████████████████████████████
I remember Tom saying," I love this lady and ██████████ will not stop us from marrying."

That comment indicated the depth of Tom's authenticity. He wanted to accompany Mary Ellen despite the ████████████ that lie ahead. ████████████████████████████████
████████████ They went on to grow a beautiful family.

Tom was very generous toward the church, my mother and me as a good friend and pro-bono lawyer. As pastor of Our Lady of the Miraculous Medal Church in Wyandanch on Straight Path for 15 years (1984 to 1999), I remember receiving a call from Tom when I arrived, asking if there was any way he could assist with legal services for the poor of our community. We had just formed Wyandanch Homes and Property Corporation, serving very poor women who were homeless and with children. Those that applied for a home signed a contract agreeing to go to the Opening Word Program run by the Sisters of St. Dominic from Amityville, for their GED degree on the parish grounds. He immediately joined our board and attended most meetings, contributing his time and expertise. He truly entered into the chaos of their lives as a compassionate member. His advice was invaluable at interviews as well as in evaluating and resolving conflicts that occurred.

After my 15 years as pastor in Wyandanch, I volunteered to serve in 1999 at the Diocesan Mission in the Dominican Republic, on the border of Haiti. Tom continued to serve the Wyandanch Homes and Property Corporation contributing his gifts to the poor for at least another six years.

He was really committed to liberating poor women from their poverty, his service was not just because of our longstanding friendship.

Occasionally, while at the mission, I would check Newsday's web page. Tom became Suffolk County's District Attorney, working closely with Police Commissioner John Gallagher. I remember being so impressed with their compassion for undocumented immigrants. Commissioner Gallagher and Tom stated publicly that, at that time and in their analysis, most undocumented immigrants complied with the law: they would only intervene if the law was violated. It took courage at the time because the climate on Long Island was building up to a very anti-immigrant atmosphere. This was well before MS 13 arrived.

The prophetic side of Tom was displayed when he was the first District Attorney in the U.S. to confiscate the priest personnel files from the Diocese of Rockville Centre, which contained the secret Sins of the Fathers. As a faithful Catholic man, Tom felt obliged to fulfill his oath of office to pursue justice for the people of Suffolk. Justice for him is what love looks like in public. His understanding of love required him to confront the very church he was a member of, for the common good of society. He understood what an oath before God meant, even if it conflicted with the very institution that taught him God's commandments.

I was reading this news overseas and could not have been more proud of my dear friend for the integrity and clarity of his decision in this matter.

Judge Asrack, I was deeply impressed with your attention to every word at the trial. I hope these memories of Tom Spota may help you in your deliberations in sentencing him. One suggestion for your consideration comes from my years in Wyandanch parish. On occasion, I had convicted persons assigned to us for Community Service. If you feel this would be appropriate in Tom's case because of his exemplary background, advanced age and years of service to the people of Suffolk County, you might consider assigning him to serve his sentence by working in the Opening Word Program, teaching poor women skills to progress in life, or to Hope House Ministries in Port Jefferson, working with troubled youth by dedicating his time and services in this way. Tom would be continuing to serve the people of Suffolk County and allowing them to benefit greatly from his service.

Respectfully,

Msgr. John I. Cervini

# EXHIBIT 23

John J. Charters III

The Honorable Joan M. Azrack

United States District Judge

United States Courthouse

100 Federal Plaza

Central Islip, New York 11722

Subject: Mr. Thomas J. Spota III

Dear Judge Azrack,

I have known Mr. Spota for close to forty years. I knew him first as an Assistant D.A. in Suffolk County, and then when he went into private practice, and then when he became District Attorney of Suffolk County.

I was a member of the Southold Town Police Department for over thirty years and he was our Union attorney. I was also President of the Suffolk County Police Conference (an organization of law enforcement officers of the various police agencies within Suffolk County) for twelve years and he was our attorney until being elected District Attorney.

Over these years I have known Tom and his family and socialized with them many times. His present situation has taken a toll on the entire family.

During our professional association I've only known Tom to be an honest, hard-working attorney who always worked hard representing his clients. At no time did he ever attempt to circumvent the legal system and always instilled in myself, my union and the over 5,000 active and retired members of the Suffolk County Police Conference to uphold our oaths to protect and serve.

There were many times, when representing the members of the Conference, that a bill for his services was never received.

Any time a charitable cause arose, Tom was the first to support it both professionally and financially, and even getting his family involved.

Due to his dedication to his clients and the residents of Suffolk County, I ask Your Honor to please consider these facts when determining his sentence.

Respectfully,

John J. Charters III

# EXHIBIT 24




INTERNATIONAL ASSOCIATION OF BRIDGE
STRUCTURAL, ORNAMENTAL AND REINFORCING
**IRON WORKERS LOCAL UNION 361**

89-19 97th AVENUE
OZONE PARK, NY 11416
(718) 322-1016
Fax: (718) 322-1053





MATTHEW CHARTRAND
Business Manager/FST

ANTHONY DEBLASIE
President

JOHN CUSH
Vice President

INTERNATIONAL ASSOCIATION
OF BRIDGE, STRUCTURAL
ORNAMENTAL & REINFORCING
IRON WORKERS
AFL-CIO

The Honorable Joan M. Azrack
United States District Court Judge
United States Courthouse
100 Federal Plaza
Central Islip, NY 11722

Dear Judge Azrack

My name is Matthew Chartrand and I am Business Manager of Ironworkers Local 361. As a labor leader it is my job to see that every man and woman, of every race and color, gets fair pay and treated right at the work place.

I write to you today on behalf of former District Attorney Thomas Spota. I first met Tom at a conference that he hosted educating School Superintendents and Labor Organizations on NYS Labor Law 220. He really opened up the eyes of a lot of people in the room. We now understood the law and our roles as business agents and superintendents.

I spoke to Tom after the conference and explained to him how some of our contractors were falling behind on benefits, and our members were losing their health coverage. Tom introduced me to his Labor Team of ADA's and Suffolk County Detectives. As a result of their efforts, the situation was rectified and our employees' benefits were paid.

I tell you this because Tom didn't just care about the big cases with publicity; he cared about the ordinary worker that just wanted to put a roof over his or her family's head and provide healthcare benefits.

We hope Your Honor will keep these thoughts in your mind when sentencing Tom Spota. Please show him some leniency, as Tom's good efforts to the community far outweigh any poor choices he may have made.

Respectfully,

Matthew Chartrand

# EXHIBIT 25

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, NY 11722

February 5, 2020

Dear Judge Azrack:

I have been asked to write a few words on behalf of Thomas Spota. Mr. Spota and I have never met directly. I am only aware of his profound influence when I see the number of lives changed based on his forward thinking around second chances.

I know many of the names and faces of people admitted into Hope House Ministries as an alternative to prison. Names and faces that in some way connect back to Thomas Spota. These people had committed actions worthy of incarceration. Some for a short duration, others with the potential for an irreclaimable life altering sentence. Mr. Spota was open to the idea that these gentlemen were responsible for their actions, but also open to the idea that the circumstances around those actions were mired in conditions that did not represent the whole of the person. There were poor decisions, yes, but sometimes poor decisions are the perversion of best intentions. Sometimes poor decisions are rooted in a weakness of character, not rooted in an evil or an irredeemable flaw. Thomas Spota saw in these persons the desire to be better than those decisions. To accept responsibility for their actions, and to grow beyond.

Too often, our sentencing process takes away the chance to grow beyond. Sometimes a wrongdoing is grievous enough that a person needs to be removed from society. Removal is a blunt-force object, however, and dispensing justice in a more refined way allows the perpetrator the opportunity to overcome the damage they have done to others and themselves by being in a position to give back; to begin to rebuild the damage done. Remove someone from society, and the opportunity is lost.

As Your Honor considers the best way to hold Mr. Spota responsible for his actions, I ask you look at him in the same light he viewed those boys and men I have come to call friends: as a person who is responsible to alter his course, to reflect internally and improve, to make right and give back, and to be given a second chance.

Respectfully,

*Thom Christensen*

Thom Christensen

# EXHIBIT 26



January 27, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack,

It is with great sadness that I write this note to you on behalf of Thomas J. Spota, my former boss. In 1999 I was hired by then Suffolk County District Attorney, James M. Catterson, Jr., and I remained employed by that office until my retirement on March 1, 2019.

When Mr. Spota was sworn in as the Suffolk County District Attorney in 2002, in wasn't clear to me that I would be kept on as an assistant district attorney. Mr. Spota made the decision to keep me, and that was the beginning of what became my very productive and successful career in the office. Mr. Spota saw my potential as a lawyer, and his support, encouragement and belief in me were very important factors in my career success. Let me give you are few examples.

In 2003 I tried a case entitled *People of the State of New York v. Leslie Jennemann*. The defendant was charged with Manslaughter 2nd and Leaving the Scene of an Accident without Reporting, in the hit and run death of a pedestrian in Southampton. Ms. Jennemann was represented by Mr. Spota's former law partner, James J. O'Rourke III. Mr. Spota discussed the case with me on several occasions prior to the start of the trial. He asked about my evidence, my trial strategy and whether I believed a plea was appropriate. Not once did he attempt to sway my belief that a plea was not appropriate, and not once did he attempt to question my belief that our trial position was the right position. Once he knew I had met my legal burden to go forward, he put his faith in me and my ability to do the job right and I never felt pressure to gain a conviction. He told me to "do your best" and there was never a discussion about winning or losing the case and how a loss might reflect on him as the District Attorney. (Ms. Jennemann was convicted at trial.).

A second case that I'd like you to consider involved two Suffolk County police officers who were accused of perjury while testifying in a pre-trial hearing. The question was whether it was indeed perjury, or if the police officers were honestly mistaken in their testimony and perhaps not properly prepared by the assistant district attorney handling the case. Mr. Spota asked me to handle the confidential investigation by presenting evidence to a special grand jury over a period of months. His instruction to me was very simple...... present everything, all the evidence fully and fairly and let the grand jury decide. Once again, James J. O'Rourke, III represented one of the targets and once again, Mr. Spota did not allow that relationship to interfere in any way in the process. He supported my opinion and ability to obtain the right outcome, whatever it was. (After calling 11 witnesses the grand jury returned a no true bill on all counts.)

I chose to share these experiences with you because not only were Mr. Spota and Mr. O'Rourke law partners for many years, they were and remain close friends. Yet despite that relationship, Mr. Spota never attempted to show favor and attempt to influence the outcome of either case.

In February of 2014, Gary Melius, the owner of Oheka Castle was shot in the face. Mr. Melius survived the attempt on his life and within an hour of the assault Mr. Spota assigned me to the investigation. Very quickly it became clear that this investigation would involve interviewing not only the drug addict stepson of Mr. Melius, along with the stepson's associates, but members of the Nassau and Suffolk County Judiciary, a former United States Senator, a former Nassau County Police Commissioner, political party leaders, as well as numerous influential business leaders and investors. Not once did Mr. Spota prevent me from interviewing anyone potentially involved in the assault. He put no limits on where the investigation led, and never attempted to shield anyone from potential embarrassment or liability. His advice was, once again, "do your best" and to follow the investigation wherever it led. (The investigation is still pending.).

One last case I want to share is that of *People of the State of New York v. Daniel Greenspan*, a Murder 2nd case I tried in February 2017. It was a case that had grown cold and no longer had any of the original Suffolk County police investigators assigned to it. A break in the case allowed me to move forward on it, but I was unable to generate interest on the part of the SCPD Homicide Squad to take the investigative steps I needed them to take. I met with Mr. Spota about the case and explained the resistance I was receiving. Mr. Spota, after asking me to walk him through the case, immediately assigned two senior detective investigators from the District Attorney's Office, Major Crime Bureau to help me bring the case before a grand jury and then to trial. When I expressed my fear of a negative reaction from the Homicide Squad about this new assignment, Mr. Spota directed me to let him know immediately if I encountered a problem. (The defendant was convicted on all counts and sentenced to 25-life.)

Thomas J. Spota showed his faith in me by promoting me to leadership positions several times, and by assigning me high profile cases that were important to the office. He was interested in my work and always helpful and encouraging. Again, outcome wasn't as important as doing the right thing in a full and fair way. When the cases were covered by media, Mr. Spota allowed me to step into the limelight and gave me the credit when he could have clearly been front and center taking the credit for himself.

I am very sad that Mr. Spota, in the twilight of his life, with an elderly wife, children and grandchildren, is now facing sentencing in his own case. Quite frankly, it sickens me. I hope that you find it in your heart and mind to impose a sentence that considers Thomas J. Spota as the whole person he is, a sentence of compassion for a man who has done so very many good things in his life.

Respectfully,

Nancy B. Clifford, Esq.

# EXHIBIT 27

**MARY LOU COHALAN**



The Honorable Joan Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack,

For many years I have worked as a volunteer at the Greater Sayville Food Pantry, where
we serve more than 350 families each year with a minuscule budget that never quite
meets our needs or the needs of our clients.

In 2008, the Greater Sayville Food Pantry in Sayville received a very generous gift from
District Attorney Tom Spota. Mr. Spota chose our organization as one of many charities
in Suffolk County to benefit from his distribution of forfeited campaign funds of an
indicted local politician.

This unexpected gift allowed our Food Pantry to expand our services to our clientele and
positively impact many lives. One memorable effect of that gift was our ability to cover
an overdue tuition bill for the child of a client who–against all odds—went to Stony
Brook University. With a little help from our Spota gift, instead of dropping out, she
graduated with a 3.8 average and is now in graduate school.

Our Spota gift made a world of difference to that young woman and to many others we
served, and continue to serve.

We will always remember not just the money, but Mr. Spota's concern for those in need.
I hope Your Honor will consider Mr. Spota's thoughtfulness and concern when
determining your sentence.

Respectfully,

Mary Lou Cohalan

# EXHIBIT 28

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack,

I am writing to you on behalf of former District Attorney Thomas Spota. I did not know
Thomas personally and he does not know me, but I have benefited greatly from a program which
he has been instrumental in supporting. Hope House Ministries is a non-traditional long-term
program which has profoundly changed my life for the better. If it weren't for people like Tom,
Hope House would not be as successful as it is today and people like myself would have been
cheated out of another opportunity for life.

I followed Tom's case closely and do not endorse the actions he's been convicted of. But
I do plead with Your Honor to take into consideration the positive things he has done when
sentencing him. For if it weren't the compassion and forgiveness, he has exhibited consistently
for people like myself who have made mistakes in the past, I and many of my close friends would
not be here today. To put it frankly, we would be dead or in prison. Instead, we are productive
members of society. We are lawyers, social workers, teachers and so much more, thanks to
people like Tom Spota.

I understand Your Honor's responsibility for determining an appropriate sentence for
Tom Spota. I in no way claim to know what is right and/or just. All I know is I was shown
compassion when caught in the system and, because of the forgiveness I was shown, I have
committed my life to helping others.

I appreciate the opportunity to be heard, I hope Your Honor takes what I've said into consideration when sentencing Mr. Spota.

Respectfully, 

# EXHIBIT 29

EMILY A. CONSTANT

February 25, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack,

As Your Honor may remember, I retired from the Suffolk County District Attorney's Office in December 2017 after thirty-eight years of service. The last position I held was Chief Assistant District Attorney (2010-2017). Immediately prior to that I was the Division Chief of Investigations (2003-2010). These assignments required almost daily interaction with Mr. Spota. I therefore believe that I am uniquely positioned to offer a broad narrative about his 16-year tenure as District Attorney.

Tom Spota was an enthusiastic, hardworking, smart, demanding and challenging boss. He loved being the District Attorney. He embraced the complexities of the position, understood the limitations of his authority, and exercised it humbly and thoughtfully. Mr. Spota appreciated the strengths of the career prosecutors on his executive staff while doing whatever he could to make them better prosecutors and supervisors. He did the same with line Assistant District Attorneys, constantly questioning and challenging them, particularly when they were on trial, while always recognizing that they were in the best position to make strategic decisions in court.

Mr. Spota took risks, acted boldly but not recklessly, and was creative but never "reinvented the wheel" just because he could. His would always be the one question you couldn't answer in a meeting, no matter how thoroughly you prepared.

In February 2002, just two months into his first term as District Attorney, Mr. Spota took the unusual and controversial step of authorizing the debriefing of a predator priest who had been arrested in Suffolk County in May 2001 for the sexual abuse of a teenage boy. The priest, Michael Hands, provided the prosecutors he spoke to (including me) with detailed information that led to a comprehensive, ground-breaking review of the abuse of children by priests working in the Diocese of Rockville Center (encompassing both Nassau and Suffolk Counties) and the exposure of a decades-long cover up at the highest levels of the Diocese.

Unfortunately, because of the statute of limitations as it then existed, along with inadequate state laws to address the cover up, no additional prosecutions resulted from the probe. Instead, a Suffolk County grand jury issued a report of almost 200 pages that exposed the predator priests and their supervisors and provided a blueprint for change. The grand jury report received national attention and resulted in countless news articles, editorials and news columns praising Mr. Spota, a lifelong practicing Catholic, for his courage.

The DRVC grand jury report was the first in a series of investigative grand jury reports during Mr. Spota's tenure on topics as diverse as *Long Island School District Finances* (2006), *NYS Medicaid* (2006), *Suffolk County Ethics Commission* (2012), *the Opioid Crisis and its Origins* (2012), the tragic limousine crash that resulted in the deaths of four promising young women (2016), and an expose of the New York State Foster Care system (2017).

These grand jury reports exposed critical failures in government and elsewhere at the federal, state and local level, along with regulatory systems and decisions by public officials that cost taxpayers millions of dollars and put the lives of citizens, including many of the most vulnerable, at risk. The grand jury reports took on powerful institutions and special interest groups, including the Catholic church, public school administrators and teachers, pharmaceutical companies, medical professionals, politicians, the automobile industry and entrenched government bureaucracies. As an elected official and despite the political risk associated with challenging the status quo embraced by these constituencies, Tom persevered for one reason: because it was the right thing to do. For Tom Spota, doing the right thing took precedence over political expediency, public perception or personal beliefs. He used his high-profile public platform to expose wrongdoing and as a catalyst for change, to the long-lasting benefit of the citizens of Suffolk County.

Tom's tenure was defined by numerous "firsts". These included the first job sharing arrangement in office history, the appointment of the first woman Chief Assistant, and the creation of new bureaus, including a Vehicular Crime Bureau, a Government Corruption Bureau, an Insurance Crimes Bureau, an Asset Forfeiture Bureau and a Training Bureau. Mr. Spota created a seasonal East End DWI Task Force, successfully lobbied for the passage of an improved and more effective prevailing wage law known as the "Spota Bill," and worked seamlessly with numerous outside agencies on joint investigations and prosecutions.  Tom worked tirelessly with Mothers Against Drunk Driving to help change laws relating to the prosecution of cases involving intoxicated drivers who caused serious physical injury or death, making them easier to charge and prove. He stood with the relatives of far too many victims of crashes where likely impaired and/or intoxicated drivers left the scene, and repeatedly urged the state legislature to increase the penalty for doing so, thereby removing the unintended consequence of the charging and sentencing disparity between the crimes they faced and the crimes they would have faced had they chosen to remain at the scene. His Vehicular Crime Bureau prosecutors visited dozens of high schools during every prom season to speak to thousands of students about the perils of impaired, intoxicated and distracted driving. Tom partnered with the Amistad Black Bar Association to offer the first Diversity and Implicit Bias training in the County to Assistant District Attorneys. In early 2017, over the objection of many prosecutors statewide, Tom mandated open file discovery in all cases. During his tenure he increased the number of female prosecutors in the office to over 50% and significantly increased minority representation in the professional staff. He fought for appropriate compensation for prosecutors and was successful in revamping a decades-old salary plan to ensure continued salary increases.

Tom progressively expanded the deployment of the latest technology in the DA's Office, the SCPD, the New York State Police, town and village police departments, and the Suffolk County crime lab with his unprecedented distribution of forfeiture funds, which allowed these agencies to purchase costly equipment they could not provide for in their own limited budgets.

This included complex and sophisticated scientific and forensic equipment, bullet proof vests, vehicles, boats, electronic equipment and more. Likewise, he supported dozens of non-profit organizations with generous assistance from forfeiture funds, including agencies providing Sexual Assault Nurse Examiner services to sexual assault survivors, the Suffolk County Child Advocacy Center, United Way, Parents for Megan's Law and the Crime Victims Center, MADD, various domestic violence agencies and countless others.

Mr. Spota oversaw the prosecution of numerous high-profile cases, including environmental catastrophes, organized criminal rings involved in the trafficking of humans, narcotics, guns, stolen property and counterfeit luxury goods. He hosted Chinese dignitaries in his Hauppauge office at the successful conclusion of an international trademark counterfeiting case. As Suffolk's top prosecutor he dismantled groups of insurance fraudsters who engaged in dangerous staged accidents and prosecuted the first drunk driver in the county for Murder in the Second Degree and the first drug dealer in New York history for homicide in an overdose fatality.

As District Attorney, Tom oversaw the successful prosecution of infamous murder cases, including the quadruple Father's Day slaying of four innocents in a Medford pharmacy at the hands of David Laufer, the blood sport killing of immigrant Marcelo Lucero by Patchogue-Medford high school student Jeffrey Conroy, reclusive Stephen Manolis' killing of his teenage neighbor Kristen Scarabelli, and the revenge murder of financier Theodore Ammon at the hands of Daniel Pelosi, to highlight but a few.

Perhaps what most defined Mr. Spota's tenure was his aggressive prosecution of political corruption. In his first term alone, he obtained the convictions of at least thirteen public officials without regard to position or party. Corrupt public officials, including police officers, serving at every level of government were arrested, prosecuted and convicted. Upending traditional public integrity investigations with the use of techniques usually reserved for organized crime investigations, Mr. Spota became, as The New York Times called him, *The Scourge of Suffolk Politics*. (The New York Times, Sunday, March 26, 2006.)  Nevertheless, as the Times noted, a former Suffolk County Executive stated that "[i]t's an accepted principle…that Tom Spota is nonpartisan and even handed in his prosecutions…. He goes where the evidence leads him and he's known as an equal opportunity prosecutor." The Times went on to note Tom's "wide reputation as a careful and principled prosecutor."

Tom's tenure was also defined by the frequent exercise of mercy in the investigations he undertook of wrongful arrests and convictions, as well as his review of cases where the collateral consequences of conviction prevented defendants from gainful employment after turning their lives around. A few examples include the complete exoneration of a wrongfully arrested man in the robbery of a vulnerable victim, restoring the hope of freedom to a battered wife convicted of murder but who was denied the effective assistance of counsel when he consented to a motion to vacate her conviction and later offered a plea to a lesser and more appropriate crime, and consenting to the withdrawal of the guilty plea of a PhD-holding father who could not get a teaching license because of a robbery conviction from an earlier time in his life. In another first, he partnered with Hope House, a drug treatment program for addicted men, to give them much-deserved second chances in the criminal justice system while protecting public safety.

Additionally, Mr. Spota embraced the work of the New York State treatment courts and, as a veteran himself, Tom was instrumental in the establishment of the Suffolk County Veterans Court. His dedication to the mission of these courts saved countless lives from abuse, addiction and despair.

As District Attorney, Tom's door was always open to his staff, defense counsel, law enforcement officials, government officials and ordinary citizens. He carefully listened as they advocated for clients, constituencies and individual causes, offering sage advice when solicited. In times of joy and sorrow he stood by his staff, providing accommodation for illness or temporary family emergency to enable employees to continue to contribute despite challenging personal circumstances.

The work of a modern-day District Attorney is tough, messy, and subject to unrelenting public scrutiny and criticism. In my view, Tom Spota more than measured up to these challenges. I say this knowing full well the details of his conviction but with the hope that the information I have provided may act as an important counterpoint to the trial testimony that Your Honor heard.

Does Tom Spota have faults? Of course. One could argue that he should have turned his back on James Burke long before he did. But this must not erase his impactful career of public service, one that I would hope Your Honor considers before you decide on his sentence.

Abraham Lincoln believed that "mercy bears richer fruits than strict justice". I hope that President Lincoln's words may help inform Your Honor's decision regarding the appropriate sentence for this good man.

Respectfully,

*Emily A. Constant*

Emily A. Constant, Esq. (retired)

# EXHIBIT 30

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722                          January 23, 2020

Dear Judge Azrack:

It had been my privilege to work with Tom Spota, from nearly the beginning of my tenure as the Chief of Police, in and for the Village of Quogue, Suffolk County, New York. Tom Spota was a District Attorney who recognized that he represented all jurisdictions within Suffolk County and not just the larger population residing within the western townships. Previous District Attorney leadership had always concentrated their efforts on the largest voting population and  only looked at the five eastern townships as an afterthought when they occasionally needed additional assistance from the District Attorney's office.

Mr. Spota had never taken that approach with any of the east-end police departments. From the very beginning, he made it a point to meet with all department heads from the various jurisdictions so he could establish a personal relationship with each police official as he believed this would help promote open communication and enhance professional services wherever you worked or resided within the County of Suffolk. As a result of Tom's direct availability to all police departments we were able as a group to communicate our difficulties in acquiring large ticket items needed to better perform our duties such as, computer technology, electronic radio equipment, laptops used in a mobile environment and many additional upgrades that allowed the latest technology to be utilized within the smaller police departments. This allowed us to thrive even though funding for these items was unavailable within our local budgets.

As a result of my many years working and interacting with Tom Spota, I came to know him on a personal level as well and realized what a true gentlemen he truly is and appreciated his vast knowledge when I elicited an opinion on a law related subject.  Tom was never too busy to offer his input and would go out of his way to help if you really needed an answer to a pressing situation.  In short, Tom Spota is truly one of the kindest individuals I have ever had the pleasure to know and I respectfully request that the Court additionally consider Mr. Spota's many accomplishments over a career that spanned nearly five decades as he truly enhanced the capabilities of the District Attorney's Office as well as the capabilities of every police department within the County of Suffolk.

Very Respectfully,

Robert B. Coughlan
Chief of Police (Ret.)