# EXHIBIT 31

### ANTHONY V. CURTO, ESQ.

February 3, 2020

The Honorable Joan M. Azrack
United States District Court Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack:

I am writing this letter on behalf of Thomas J. Spota.

Within the discretion you possess as a United States District Court Judge on sentencing and consistent with the oath of office you have taken to faithfully administrator the laws of the United States, I implore you to exercise leniency to the fullest degree you possess in favor of former Suffolk County District Attorney Spota.

Supporting this request, I would like to bring to your attention to four specific and significant events which I believe are relevant to your exercising discretion in this matter. In 1970, I was counsel to Harry Chapin, the iconic folksinger and philanthropist who died in a fiery crash on the Long Island Expressway.

Harry died virtually penniless because he was financially consumed by his charitable obligations.  Prior to his death, Harry had assigned to WHY HUNGER, a charity he founded, the entire proceeds of his multi-million dollar life insurance policy to secure its future.  Furthermore, Harry performed over 50 concerts a year for various charities, which left Sandy Chapin and their five children, and their future, in difficult financial straits. Their only asset was the wrongful death claim the estate had against Volkswagen of America and Supermarkets General. Although my firm had litigation capabilities, I knew the case would be vigorously defended by the defendants and therefore I wanted to secure the best legal advice on behalf of the estate as was available, under the circumstances.

I selected Tom Spota's firm to act as co-counsel on behalf of the estate and its heirs. Tom's firm accepted this responsibility and in support of the family they substantially reduced their fees. The case was tried and judgment was awarded for $10

About 50 times.

Hon. Joan M. Azrack
February 3, 2020
Page 3

Over the 40 plus years I have known District Attorney Spota, I have had only five circumstances that brought us together. The four above and the last one, where I asked to him to write a commentary on the jacket of my book "The Time for Justice" in which he wrote the following:

> "*The Time for Justice couldn't be more timely, enlightening, provocative and contemporary. Tony Curto's book is most valuable in illustrating that our justice system is as important to our nation's infrastructure as our roads, bridges and educational system. Simply put, we have to address the present crisis in the judicial infrastructure to stop litigants intent on delay and defiance. The Time for Justice is a clarion call for fair, prompt and affordable justice for everyone.*"

Each one of these incidents has left me with a deep sense of respect for him and for our friendship.

I hope this additional information gives you a fuller understanding of the person over which you will exercise discretion.

Respectfully,

ANTHONY V. CURTO

AVC/ac

# EXHIBIT 32

February 7, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack,

I am writing to you on behalf of Thomas Spota who is due to be sentenced in your court.

I worked as a Detective Investigator in the Suffolk County District Attorney's Office (SCDAO) from 2002 until my retirement in 2013. Prior to that, I was a Criminal Investigator for the Office of the U.S. Attorney EDNY for twenty-nine years.

During my tenure at the SCDAO I was assigned to the Government Corruption Bureau (GCB) and worked with Mr. Spota often on matters in that office. In that time I came to know Tom as a respected supervisor and dear friend.

In matters of integrity and character, Tom was always of the highest caliber. I grew to respect his experience, judgement and professionalism, as well as his devotion to the law.

Tom is beloved by the SCDAO staff who worked with him, and treated all of us as though we were family. Tom expected us to be devoted to our tasks and fair to all witnesses, defendants and those we dealt with. I was proud of our work and proud to have worked for and with Tom Spota.  Tom is a strong family man and respected community leader as well.

Please take all of this into consideration and grant leniency in your sentencing discretion.

Respectfully,

J. Michael Daly

# EXHIBIT 33

# William DeVore

February 3, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Court House
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack:

I am honored to write this letter to respectfully urge you to sentence Tom Spota to as lenient a sentence as possible. I have known Tom for over forty years spanning my entire career practicing law in Suffolk County; twenty years as a prosecutor and twenty years as a criminal defense attorney. I had the privilege of working for Tom in the capacity of Deputy Bureau Chief of the District Court Bureau from January, 2002 until I retired in December, 2017.

I have great respect for Tom. He is an excellent attorney and more importantly a good person. I also would like you to know that Tom was an excellent boss. As a prosecutor I worked for three different District Attorneys and in my opinion the professionalism and morale in the office was never higher than under the Spota administration. He was demanding but fair and always demonstrated understanding and compassion for those others.

I would like to share a particularly sensitive situation that arose regarding a young ADA under my supervision. I was directly involved in the matter and eventually Tom also became involved. I believe Tom's handling of this situation speaks volumes about his character and compassion for others.

An ADA under my supervision, within a few short months of being hired for her first legal position after graduation from law school, was beset by stress-related problems that unfortunately rendered her incapable of

coming to work and performing her duties as an ADA. It bears mention that District Court ADA's were each responsible for overseeing several hundred cases some of which involved child sexual abuse, vehicular fatalities and other sensitive issues. Per office policy, these victim-sensitive cases required intensive scrutiny and vigilance. Needless to say, the job could be stressful.

Bureau supervisory staff including myself, became concerned that this individual would not be able to handle the rigors of the job. There even was a debate about whether or not to recommend termination of employment. Ultimately the matter was referred to Tom who became personally involved in the situation. Tom spoke with her supervisors and her family. He wanted to know more about the ADA and asked many questions demonstrating his sympathy and concern. Tom showed great compassion for the young attorney who was struggling to overcome her difficulties and return to work. Tom was in contact with her family, continued to monitor her progress and ultimately decided to allow her to continue in her position. Due to his understanding and compassion this ADA returned to work and developed into a fine young attorney who has flourished as a prosecutor.

It is not overly dramatic to state that the fate and future of the young ADA's career was in Tom Spota's hands. I respectfully ask that you show the same understanding and compassion for Tom at the end of his career that he showed the young ADA at the beginning of hers. He deserves it.

Respectfully,

William DeVore

William DeVore

2

# EXHIBIT 34

February 10, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York  11722

Dear Judge Azrack,

I am a practicing attorney and in my practice I have had many occasions to submit sentencing submissions where I have included letters from family and friends on behalf of a man who is about to be sentenced. This letter is offered to plead for leniency in the sentencing of my friend, Thomas Spota.

My wife, Lisa, and I have known Tom and his wife, Mary Ellen,  some 10 - 15 years. The four of us are friends. I originally met Tom through a mutual acquaintance, Ralph Vasquez, when they needed a fourth for tennis. Since Tom and I had the law in common we immediately hit it off and a friendship developed.

We socialized together, went to dinner, had barbeques at the beach, where I would play the guitar and we all would sing songs from the 60s & 70s. During these social occasions we would spend time speaking to one another which allowed me to learn a little about the character of the man. Tom was very proud of his public service, especially since it provided him with an opportunity to help people.  I learned that he chose public service above more lucrative

opportunities. Often we discussed the multitude of opportunities afforded him if he were to enter the private sector. However, Tom chose service to the public over personal financial gain. He expressed a sincere desire to help all people -- not just the rich and mighty, but people of all means.

Although I am sure the Court will review Tom's public service record and the many triumphs he has had in a lifetime as an Advocate for the People, I would like to share one example that I personally was privy to which I hope will serve to give the Court some insight into the man I know. Ralph Vasquez (the person who originally introduced Tom and I to each other) owns a small contracting business in Suffolk County. Mr. Vasquez was the victim of a fraud scheme which appeared to be one of those crimes that seemed impossible to solve. The amount of the fraud was about $6,000, which was relatively small, but significant to Mr. Vasquez. When Tom learned of the incident he immediately got involved and was able to help a small Suffolk County businessman recover his money.  This example may pale in comparison to some of his more significant cases (e.g. the investigation & prosecution of Church leaders and politicians), but it offers a glimpse of the character and the merit of the man. By choosing public work, we see in this small example a demonstration and motivation to help others and to do good.

It is a sad day for all when a good man, apparently driven by some misguided and misinformed sense of loyalty, makes decisions that will result in this 78 year old man, who has spent a lifetime in the service of the people, to be sentenced.

Tom's situation brings to mind one of my very first cases, certainly the very first case I handled where the appropriate sentence was in issue. The judge, when deciding to impose a non-incarceratory sentence of probation, indicated the reason for the sentence was, in words or substance, that there was a difference in sentencing a "criminal" and "a good man who has committed a criminal act."

It is requested that Your Honor temper justice with mercy. Tom Spota's sentence will not only impact the man and his legacy, but equally importantly, his wife, Mary Ellen, a wonderful woman, his children and his grandchildren.

Respectfully,

Gerald J. Di Chiara

# EXHIBIT 35

David F. Dolan

██████████████████████████

January 22, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack:

I have had the great pleasure of knowing Thomas Spota, informally and in a non-business context, for
over forty years. As a good friend of Thomas Spota's family for these many years, I have met Tom
many times and had the very good experience to have had memorable conversations with him and his
wife and children and even his remarkable Dad and courageous stepmother during numerous family
gatherings. For what it is worth, I would respectfully and humbly ask that you please take my personal
testimony into consideration as you progress toward a finalization of the current judicial matter
pertaining to Thomas Spota.

I believe that as a result of these many years of knowing Tom Spota personally, speaking with him on a
diverse range of subjects, and observing him in numerous, private capacities, I can honestly attest to his
wonderful character, sense of values and priorities, and a commitment to honesty and fairness at all
times and in all circumstances. At the time when I first met Tom Spota in the early 1970s he was an
attorney in private practice. While Tom Spota was naturally very busy with his professional career, he
always was uncompromisingly dedicated to his loving wife Mary Ellen and as a wonderful father to his
two daughters, Patty and Katie, and his son, Tommy. Importantly, I also was very admirably observant
of Tom Spota's compassionate dedication to his Dad after the sad passing of his Mom at a relatively
young age. Tom also was wonderfully supportive, kind and helpful in very pragmatic ways to his dear
stepmother Kim who developed and ultimately passed ███████████████ Once again,
notwithstanding his busy career and dedicated attention to his own family, Tom seemed to be ever-
present to his twice widowed Dad and helped him in innumerable, loving ways as his father's

████████████████████████████████████████████████████████
███████ During this time, Tom's love of family and strength of character and purpose was vitally
important and clearly evident in successfully bringing together all his immediate family as well as his
two sisters, Mary and Joanne, and their families. Like all good people of noble character and like all
effective leaders, Tom most certainly also felt the sorrowful pain of loss but yet selflessly dedicated his
time and attention to simply "being there" for his family in their time of great need.

During the many happier and normal times when I had the pleasure of being with Tom, I always fondly
recalled his personable and joyful demeanor and natural inclination to smile and be lighthearted.
Whenever inevitable conversations arose about life or society, it was always quite admirable to witness
Tom's consistency in his honesty and sense of empathy. I don't know if it was attributable to our

shared Roman Catholic beliefs and education, or the fine intellect and values of his Dad, or perhaps simply Tom's DNA, but Tom was always very logical, fair and supportive of people, especially those who experienced life's hardships. Tom always seemed to be understanding and a good listener to those he encountered. He was never selfish and the pronoun "I" was admirably absent from all his conversations, whether they be intellectually complex or mundane. Tom is a people person and I believe his visionary perspective is always externally, as opposed to internally, focused. Notwithstanding Tom Spota's professional success and visibility, he is genuinely humble, unpretentious and compassionate. Tom Spota is an "every day" type of guy who has a natural tendency and chemistry to be welcoming and friendly to everyone he meets.

I believe that there are very few people who respect justice and the rule of law more deeply and passionately than Thomas Spota. Indeed, Tom has dedicated his entire life to upholding fairness and justice so that we all may have a safer and more peaceful coexistence with each other. We certainly all very well recognize that we do not live in the Garden of Eden, but Tom nonetheless is always the eternal optimist and has tirelessly worked towards achieving a better quality of life for all the citizenry. In the perfect hindsight of looking back into life's rearview mirror, perhaps we all wish that certain past words, circumstances and/or pathways could have been avoided or approached differently. However, all our actions are respectfully subject to both temporal and eternal judgment. As intrinsically good and decent people, we hope and pray that our respective judges will also take into consideration the macro picture of our lives and all the good and compassionate things we have done for others. We hope that we too will be shown mercy for any transgression.

Thank you Judge Azrack for your kind consideration of my opinion and experience in knowing, and having as a dear friend, Thomas Spota.

Respectfully,

David Dolan

2

# EXHIBIT 36

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack,

I met Tom Spota about 10 years ago through a mutual
friend and have developed a unique friendship with him over
that time.  He has always displayed humbleness and humility
around others, as I have witnessed first-hand.  Most times we are
in crowds of people demanding his attention and he interacts
with them, giving each his individual, undivided attention to the
subjects they bring up, from current events to discussing
swimming, golf or tennis.  He shows genuine concern and is
more than gracious with his time.

My family owns a small business on the south shore, and
Tom will on occasion come to purchase something.  He insists
on paying full price, and demands not to be treated special.

At Tom's advanced age, with all the good he has done
throughout his many years in law enforcement and for the local
communities, always being available for local charities, which is
where I typically see him, I know what a tremendous toll it
would take on him and his family for him to be separated from
them at this time.  He has been a pillar in many communities
over the years and I believe he can continue to serve them well,
if given the opportunity to.

I thank Your Honor for your consideration,

Respectfully,

Dennis F. Donovan

# EXHIBIT 37

January 21, 2020

Honorable Joan M. Azrack
United State District Judge
United States Courthouse
100 Federal Plaza
Central Islip, NY 11722

       RE: Thomas Spota

Dear Judge Azrack:

I am pleased to have the opportunity to submit this letter to the Court on behalf of Thomas Spota.

I first met Mr. Spota in 1992, when I began my legal career as an Assistant District Attorney in Suffolk County. At that time Mr. Spota was the senior partner at Spota, O'Rourke & Ammerman in Hauppauge, New York. Over the course of the following six (6) years that I served as an Assistant District Attorney I prosecuted numerous defendants that Mr. Spota and his partners represented. During that time period I was always cognizant of Mr. Spota's professionalism, as well as his dedication to his clients and sincere honesty.

In 2002 I served as President of the Suffolk County Brehan Law Society. At that time Mr. Spota was District Attorney of Suffolk County. On numerous occasions I contacted Mr. Spota's office for the purpose of asking him to appear and speak at Brehan Society events. One such event was in 2002, when our organization honored Police Commissioner John Gallagher as our man of the year. Mr. Spota always got back to me immediately and always accommodated my requests. I was always very impressed that the District Attorney would give so much of his time to help others and appear at worthy causes. In 2013, I began serving on the Board of Directors of the Suffolk County Criminal Bar Association. During the past six (6) years Mr. Spota was fully supportive of our organization, attending our events and encouraging other young lawyers to attend and join our Bar Association. This included appearing at our most recent Judge of the Year Ceremony in June 2019.

January 21, 2020
Page Two

In the sixteen (16) years Mr. Spota served as District Attorney, I represented clients in Suffolk County Supreme Court and Suffolk County First District Court on a daily basis. I have only known Mr. Spota to be extremely honorable and fair. He has always impressed me as a very caring prosecutor: caring not only for each victim but also each individual defendant. I always have considered, and continue to consider, Mr. Spota to be a role model for myself and other lawyers who care deeply about the law and about justice.

I sincerely hope these thoughts and feelings help the Court recognize Mr. Spota as a very good man who deserves as much leniency as possible.

Thank you in advance for your consideration in this matter.

Yours Most Sincerely
And Respectfully,

DANIEL T. DRISCOLL

# EXHIBIT 38

Joseph P. Dwyer Jr.

████████████████████████

January 20th, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack,

I am writing to urge leniency in the sentencing of my father-in-law, Thomas Spota.

I have known Tom for over 12 years. In all the years knowing the family, Tom and his wife, Mary Ellen, are the kindest, most hospitable people I have ever met. This experience has taken a horrible toll on Tom and the entire family. It pains me to see the suffering and emotional toll that Tom, Mary Ellen, my wife, Patricia, and her siblings have experienced in the last several months.

For as long as I've known Tom, I've always looked up to him as a great example of what a great father, spouse, and grandfather should be. His grandchildren absolutely adore him and I can tell you firsthand, my two children, ██████████████████, are always looking forward to seeing their "Grandpa" and "Grandma."

Tom has a deep love for his family, faith, and country. In addition to serving in the community for many years, Tom also served in the United States Marine Corps early in his adult life.

After I first started dating my wife Patricia, ████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████ I was able to witness the strong bond the family
had to help each other.

While I cannot speak to the extent of Tom's career professionally, I can tell you how I've heard stories about Tom, as District Attorney, gave a person a second chance in life, and would hear later how that person was able to turn their life around and be a successful, good-standing citizen to the community. These stories always left an indelible impression on me.

I feel particularly badly about Tom's five grandchildren. They range between the ages of two and six years old. They are too young to understand the gravity of the situation. I find it my responsibility to write this letter on their behalf simply because they cannot speak yet for themselves. Life is precious. Time is of the essence. I had two wonderful grandfathers growing up and I learned many lessons from them. There's not a day that goes by that I do not think of them. I wish I could have one more day with them.

My hope is that Tom's five grandchildren can have similar great experiences like I had with my grandfathers. They are wonderful children and will be heartbroken if they were unable to spend time with him, as they do now. I know the thought of this deeply hurts Tom as well.

Thank you, Your Honor, for taking these thoughts into consideration. I pray for your compassion.

Respectfully,

Joseph P Dwyer Jr.

Joseph P. Dwyer Jr.

# EXHIBIT 39

Patricia S. Dwyer

████████████████████████████████████

February 2, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack,

I am writing to you on behalf of my father, Thomas J. Spota III, to urge for your leniency during
his upcoming sentencing proceeding. Although his current circumstances are beyond my
comprehension, I can attest to the fact that my father is a good man. He loves his family. He is a
devoted husband, father, and grandfather of five. He has also made a positive impact within his
community. Unfortunately, this process has already taken a heavy emotional toll on my father. It
is painful to have to watch him struggle, especially since he is a pillar in our family. I am blessed
to have him as my father. I will always want him to be a central person in my life and my
children's lives. For these reasons, I beg for your leniency.

My parents have been married for fifty years. Shortly after my father proposed, my mother ███
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████ Undoubtedly, I rely on my father's strength and dependability to get
me through the good and bad times.

My father's continued source of guidance and support has made life easier. Certainly, I am lucky
that he has walked me down the aisle, attended graduations and christenings, but it is the routine
visits that are equally memorable now. My father is the one who builds the fire we sit around at
every family gathering. He is my bridge partner when we play cards. It is difficult to put into
words the joy and life he brings to every occasion. My children light up when they see Grandpa.

My parents have plans to move to Tennessee. They will live ten minutes from my home and my
two children: ██████ (6) and ██████ (2). I know my mom will go wherever my dad goes, so
our lives are in your hands. My children will benefit greatly by being around their grandfather.
He loves to take them to the pool. They push him into the deep end repeatedly. It brings them
such happiness, like it brought me when I was a child, to see him resurface and ask
astonishingly, "Who did that?" Then, he spends time teaching them how to swim. Yet, my

daughters' favorite game is when Grandpa starts chasing all five grandchildren around the house. It is complete chaos, filled with squeals and children running in every direction, but it is also a highlight in their day.

My father will be 79 years old this year. Life does not wait for anyone. I never knew my maternal grandfather. He died at 74. I would have loved to have that additional source of love and stability in my life. He was supposed to be an incredible man, but I only have what others tell me. I do not have the memories, but I know the importance of a grandparent because I was inseparable from my grandmother. She lived down the road from me. I was her companion, when her husband passed, and she was one of my role models. My children have a similar love for their grandparents. I want that relationship to continue to grow, and I know my father wants to be there for them too.

My father has also strived to make a positive impact during his career in law enforcement. He tried to make Suffolk County a safer place. My father has prosecuted countless number of murder cases in his career. The cases are dark; the pressure is enormous. He had death threats against him.

In 2004, I graduated college, moved home and finished an internship at the Suffolk County District Attorney's office. I saw first-hand how the District Attorney's office, under my father's leadership, was making a difference. I observed the analysis of drugs and weapons seized from our streets. I listened to a woman describe how her contractor raped her in her own home. It is not an easy job to prosecute violent crimes. However, he tried to make a difference – and did, for countless victims and the law-abiding residents of Suffolk County.

That same year, my father came home to describe an incident where a group of teenagers stole a frozen turkey. One of the teenagers proceeded to throw the turkey out of their moving vehicle. The turkey crashed into the windshield of another vehicle. It broke many bones in the victim's face; it also caused damage to her eye socket, esophagus and brain.[1] Eventually, as the other teenagers involved cooperated, one boy stood facing the possibility of a 25-year sentence. However, the victim was adamant that he receives a lenient sentence. It was a difficult case with large media coverage, and although my father was not bound to agree to a plea bargain, he did work with the victim to provide amnesty. The teenager received a six-month sentence and five years of probation. "I think it will be a real turnaround for him," my father is quoted as saying by The New York Times.[2]  The victim in this case became an inspirational speaker to inmates and troubled youth, and the teenager continued his community service (speaking to youth) for three years past his required one-year period.[3]

---

[1] Sandomir, R. (March 28, 2019), "Victoria Ruvolo, Who Forgave Her Attacker, Is Dead at 59."
http://www.nytimes.com/2019/03/28/obituaries/victoria-ruvolo-dead.html

[2] Mead, Julia C. (August 16, 2005), "Deal in Turkey-Throwing Case After the Victim Calls for Leniency."
http://www.nytimes.com/2005/08/16/nyregion/deal-in-turkeythrowing-case-after-victim-calls-for-leniency.html

[3] Ruvolo, V, "The Forgiveness Project: Victoria Ruvolo." http://www.theforgivenessproject.com/victoria-ruvolo

My father also worked closely with Hope House Ministries, a local program run by our pastor, Father Frank. Hope House Ministries assists troubled youths by giving them a second chance at life. It helps runaway children and addicts, who are susceptible to gangs and criminal lifestyles, find another way. Hope House requires their residents to hold a job and meet a certain curfew every night. There were times where my father pleaded with Father Frank to keep boys in the program, when they were late for curfew. He was a critical part of many success stories arising from Hope House Ministries.

I was used to reading about my father's success stories in the news and on TV. This experience has been extremely humbling. It tests your relationships. You find out who your true friends are, and the strength of your family. We are trying to keep on brave faces for the children, who are unaware of the circumstances, but I know the sleeplessness and stress must be impacting my father's health. I know I cannot sleep. I worry about his age. I worry about his health and safety. But I know his thoughts are on our well-being.

My father is a good man, who loves his wife and family. I write and beg you for your leniency. Thank you, Your Honor, for taking these thoughts into your consideration. I pray for your compassion and empathy. I pray you consider his grandchildren, his many good deeds over the course of his lifetime, and his potential to continue contributing to society, as you weigh your decision.

Respectfully,

Patricia S. Dwyer

# EXHIBIT 40

February 2, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York. 11722

Dear Judge Azrack:

I have had the pleasure of knowing Tom and his wife Mary Ellen for the past 25 years. I have witnessed Tom as a man of principle who loves his family and friends. In all the years I have known Tom I have never heard him gossip nor talk negatively about another person at our health club, Made to Move Tennis and Wellness. Unfortunately this is a rare quality, particularly at a club where gossip can sometimes run rampant. When I first purchased the club many years ago and created policy changes that would ensure the success of the club, many members were in an uproar. Tom was and has always been a calming and objective voice in these matters.

Tom has always been very respectful to all Made To Move team members. He has respectfully handled any suggestions he may have in regards to our services. I have greatly appreciated his kind manner.  In another instance, I had an employee steal a significant amount of money from our company. Tom kindly gave us advice with the dignity and humility that I have come to expect from him. He spent a significant amount of time with me and expressed great empathy during this time of distress.

Three years ago my wife was diagnosed ████████████. Tom always inquires about her health with great interest and concern. Most recently he inquired  once again about my wife's health, and of course he exemplified great empathy and love for us. To paraphrase him, he said that what he is going through does not compare to what my wife and I are going through. This once again illustrates Tom's ability to care about other people, even during this perilous time for him and his family.

From conversations with his wife Mary Ellen and Tom, I have witnessed the great toll that this situation has had on them and their family. While still caring and loving others in a kind and loving manner, one cannot help notice the great distress that they are experiencing.

Hopefully this letter gives you a unique view of Tom's character in the context of our community and my own personal relationship with him and his wife.


Respectfully,

Spencer Edelbaum
Founder, Made to Move

# EXHIBIT 41

28 January 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack,

I am writing to offer my thoughts for your consideration before the sentencing of Thomas J. Spota.   By way of background, I retired in 2017 from the Suffolk County District Attorney's Office after thirty-eight years of service under three different District Attorneys.   In addition, my perspective may be slightly different from some of my colleagues; I was not a County resident at the time of my hiring, I did not grow up in Suffolk County nor did I intern in the Office before my hiring.

In 1980 when I was hired, Tom was a senior trial prosecutor; he was assigned to Riverhead and I was in Hauppauge so our interaction was minimal.   However his reputation was that of a fearless prosecutor who was unafraid to try any case irrespective of its apparent ease or difficulty.   He was therefore something of a role model for young litigators in the Office.

My first in-depth conversations and dealings with Tom came after he entered private practice with another former prosecutor, Gerard Sullivan.   Tom represented several defendants that I was prosecuting early in my career.   While providing proper legal counsel to them, he was always professional and courteous to me and my fellow Assistants in the Office.   Over the years, Tom increasingly committed himself more to civil litigation and my contact with him occurred mostly at professional events -- through the Bar Association, for example.   However, for a short while, my wife was one of his secretaries at his growing firm.   She knew Tom not only to be professional but also to be a very personally considerate employer.

Tom then ran for District Attorney in 2001 and defeated the incumbent, James M. Catterson, Jr.   After a number of months in Office and meetings with Chiefs, it was apparent that his management style was very different from the previous two District Attorneys.

One primary change was Tom's visibility.  The previous District Attorneys spent most of their time in the Hauppauge Office.  The reasons were practical: the Legislators were most often there and First District Court was in Hauppauge along with the youngest/ newest Assistant District Attorneys.   Tom, however, made frequent and often unannounced visits to all of the Office locations: Hauppauge, Riverhead, the local East End Office and Central Islip.   He would walk the halls and chat with Assistants, secretaries and police/investigators.  He inquired about their cases and offered assistance, but he also engaged people about their personal lives.  He was genuinely interested in them and would follow up the next time out. And he did this until the day he left office.

On the professional/prosecutorial front, Tom had the perspective of the litigator he had been.  He offered trial advice to the Assistants when he saw them and would often actively engage them about their preparation.   And he was very interested in the investigative bureaus and their capacities to ferret out racketeering, narcotics and gun-running operations.

Twice in my own career, Tom and I discussed the use of Special Grand Juries to evaluate very pressing issues: the first was the investigation into Diocesan Sexual Abuse by Priests in Rockville Centre.  His Catholic background and convictions did not deter him from authorizing and fully supporting the effort by the Office and promoting the recommendations of the Grand Jury to all appropriate legislative and administrative bodies.  He did the same thing about ten years later when he supported a Special Grand Jury to evaluate the burgeoning opioid/heroin/fentanyl epidemic in the County.

2

Additionally, Tom was a supporter of alternative sentencing programs when appropriate. Among these programs was Hope House in Port Jefferson. He was a firm believer that a motivated defendant, in the appropriate case, should be given the opportunity at redemption. While we may have disagreed on some cases, I admired his steadfast conviction.

Overall, Tom Spota was, as the District Attorney, the name partner in the largest law office in Suffolk County, with over one hundred and seventy attorneys at the time of his departure, a greater number of support staff plus police personnel and investigators. As with his predecessors in the County and colleagues across the State, he dealt with the administrative, personnel and budgetary problems shared by all. It was never questioned that Tom's motives were always directed foremost towards the best interests of the County and those in his charge as well - from Chiefs to line assistants, secretaries to security guards and clerks.

I respectfully ask that you consider these thoughts and sentiments when imposing sentence in Tom's case.

Most respectfully,

Robert F. Ewald

3

# EXHIBIT 42

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722


Dear Judge Azrack

My name is James Feehan and I'm writing
this letter on behalf of Thomas Spota.

I met Tom through my wife Susan some
fifteen years ago.

Tom's wife Mary Ellen and Susan had been
friend since childhood.

In the course of the ensuing years she
found that both Tom & Mary Ellen to be wonder-
ful parents & grandparents and caring people.

What has impressed me the most is their
never ending compassion for my wife and
myself through the past

Tom & Mary have had birthday partys for Susan while she was still able to get around.

Their phone calls & visits have always been a cherished time for Susan as our social life declined.

I would ask that you consider the devastating loss this sentencing will have on Tom's entire family and grant him leniency

Respectfully
James J. Feehan

# EXHIBIT 43

January 15, 2020
The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack,

My name is Laura Fontana and I am writing this letter on behalf of Thomas Spota. I have personally known Tom Spota for over 14 years and want to attest to his character as a family man, my friend, and my Suffolk County elected official.

I have had the pleasure of being a part of the Spota family, getting to know his wife Mary Ellen, his 3 children (Tom, Kate, and Patty), and 5 grandkids. Tom has provided a loving life for his family, taking on the role of a supporting husband, a responsible father and loving Grandfather.

It has been said that, to see the true heart of a man, *look to his family*. Tom has raised 3 self-sufficient, responsible children who have been able to contribute not only to their profession but also to their community. All three have been lucky enough to be raising 5 wonderful children, continuing the family values that their dad instilled in them. They take family vacations and spend endless hours creating family memories at the Spota home on Long Island. Tom and Mary Ellen have been married for 50 years, continuing to love and respect each other as not only husband and wife but also best friends. Their joy of tennis, swimming, traveling, and sharing wonderful weekends full of family dinners and happy times with friends has been one of the many attributes I personally love about this man.

Now let me speak to you about Tom Spota, my friend. Tom is a man of the utmost integrity that, throughout my years of knowing him, has guided me both professionally and personally. Whenever I needed professional advice, Tom has been there to lend me his listening ear. To be able to share personal hardships and know that this friend of mine would only give me sound advice was at many times so welcomed and appreciated. He has been there for me personally, to give me advice that I could

accept and trust only from such an honorable man with his life experiences and wisdom. To say I valued his friendship are not strong enough words to express my gratitude of knowing him over the past many years of my life. To send him away from his family and friends would be such a loss for so many people.

And last, let me speak to you about what I know about Mr. Tom Spota, the District Attorney of Suffolk County. Being a registered Republican, it was knowing Tom Spota that compelled me to cast my vote for him as the Democratic DA for the county where I currently reside. His commitment to fighting crime, drug trafficking, and corruption, protecting my county from gang violence, and surrounding himself with only the best police force in order to protect our communities -- I knew he was the only man to get the job done. His record proves he is a man willing to make the tough decisions that don't always make you popular but end in positive results. Those who served under him were proud to be part of his team.

I respectively request of you to look at the man, what he has accomplished throughout his career, and acknowledge his family responsibility when taking into account his sentencing. As a mother, wife, and daughter, I would like to believe that, as individuals, we would all hope to be judged by all that we do and stand for, including our personal accomplishments, our individual values and our moral being.

Respectfully,

Laura Fontana

# EXHIBIT 44

January 23, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack:

My name is Patricia Fox and I have been a friend of Tom Spota for approximately 25 years.

I have spent a lot of time with Tom at family social functions and find him to be a person who cares about people and is always willing to listen to their concerns about life and other matters.

I volunteered to work on his first campaign for District Attorney because I believed he would best serve the people of Suffolk County because of his dedication to the law and his highly moral character. He was re-elected for 3 more terms to that office, which makes me believe he was thought to be a highly dedicated, honest, and respected person.

Mr. Spota was inducted into the Long Island Press Power List Hall of Fame in 2009 and has been named to that list at least another 4 or 5 times.

Mr. Spota is 78 years old and is married with three grown children. This situation has brought a great deal of stress upon him and his family. I feel that his many years of service as a prosecuting attorney, a private attorney, and most of all his much-respected 16 years of commendable service as Suffolk County District Attorney, should be taken into consideration at this important point in his life.

Please consider as lenient a sentence as possible.

Thank you for taking the time to read this letter.

Respectfully,

Patricia Fox

# EXHIBIT 45

January 31, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Dear Judge Azrack,

It is with great sadness that I write on behalf of Thomas Spota.

I am in shock at what has befallen him and his dear wife and family.

I have known Tom for over fifty years, since he married Mary Ellen, my dear childhood friend. Mary Ellen and I grew up together living next door to each other and in and out of our respective homes. We were inseparable. I was at Mary Ellen and Tom's wedding. They went off to their honeymoon cruise, where Mary Ellen spent most of the time ⬛⬛⬛⬛⬛⬛⬛⬛. She had not felt well before her wedding but then ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

Tom was a very young bridegroom when his new young wife required extra tender loving care constantly. He was always there for her. ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ He never flinched from his husbandly duties. He was kind, loving and caring as a new young spouse. Where many young men would have hesitated or left the situation completely, Tom rose to the occasion and stood by his wife with love and kindness, always putting Mary Ellen first.

Tom was always a man with high professional goals but he was always there for his wife and kids whenever they needed him. He was responsible, upright and proud.

Tom was always a hard worker with great values. He worked very long hours. He was always an achiever with good humor, good spirits and kindness. I never saw Tom ill-tempered or unkind. He loved his wife and children and would do and did everything for them.

Tom was always kind and loving to his own father and siblings. Tom's mother died when he was quite young and he often spoke of her with great love. Tom was always kind to his in-laws—Mary Ellen's parents and siblings. His home is always open to family and friends.

He always had a great sense of humor and saw life as it is and accepted all that happened with a kindly heart and humor. He was always generous and kind.

When he spoke of his work he always spoke with great conviction for what is right and what is wrong. He had a real true moral compass which could be seen in all he did—family, work and prayer life.

I have never, in all the years of close personal relationship with Mary Ellen and Tom, detected anything but the highest morality, true values of the highest order, good humor and kindness in Tom as he related to all of us who call him a friend, toward his children and their spouses.

Tom has always displayed that American go-get-it attitude. He worked hard for all he got and he was proud of all the work and his achievements.

These last few years have been treacherous for the whole Spota family. Mary Ellen and Tom have tried not to let all of the court proceedings, bad press and general public humiliation interfere with their personal and family lives. Very hard to do!

I am concerned about the toll it has already taken and terribly concerned about what might await Tom as he is sentenced.

I know that so many friends, relatives and others would ask for leniency and as a long-standing friend I join them in begging the Court to give Tom a lenient sentence—as lenient a sentence as possible.

I worry about him, now as he is older and less able to take what may befall him. Certainly the humiliation of the past years, and the weeks of trial, during which he has suffered all the slings and arrows and pain of watching a whole life's work disintegrate before him are a devastating punishment in itself. Could this be considered in determining an appropriate sentence?

After so many years of working for the community, I would ask that these things count for Tom to receive as lenient a sentence as possible.

He is no longer the hearty young man from fifty years ago when I met him. He is an older and much more reflective person who has experienced so much personal and public pain and humiliation. All of that has all taken a tremendous toll on Tom and Mary Ellen and his family and friends who love him.

The ravages of time and circumstances have taken their toll.

I worry about what might await him as he is sentenced. His age and success in his job as District Attorney will only work against him if he is incarcerated. That punishment may be way too harsh, as he is more fragile than appears.

With deepest respect, I asked that all this be taken into consideration as the rulings are made and that consideration be given to the good, honest and upstanding person that Thomas Spota has been throughout his life.

Respectfully,

Adriana Frattura

2

# EXHIBIT 46

Robert J. Gaffney

████████████████████

February 20, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York   11722

Dear Judge Azrack:

I am writing this on behalf of Thomas Spota, with whom I have been acquainted for over forty years. Tom and his wife Mary Ellen lived in the same community as me and my wife.

While we were not social friends, we shared a number of mutual friends and had a number of common interests. Tom and I were both young lawyers pursuing our careers in what was then, Suffolk County in 1973, a rapidly growing community of young families. In 1973 all of the members of the Suffolk County Bar Association would fit in one photo.  Every attorney knew just about every other and reputations for skill and integrity were formed and molded into lasting impressions.  I can still recall the names of the early practitioners for whom I had the greatest respect.  Tom Spota was one of those practitioners.

I had been serving as a Special Agent in the Federal Bureau of Investigation and resigned in October of 1973 in order to move to Miller Place, a hamlet in Suffolk adjacent to Mount Sinai.  During this time I met Tom Spota on a professional basis and continued to run into him from time to time over the years.

In 1984 I was elected to the New York State Assembly and in 1991 was elected Suffolk County Executive. It was in this time period that my contacts with Tom became more frequent. He was the attorney for The Suffolk Detectives Association, one of the County's many bargaining units.  We would speak often of government issues and I grew to respect his views on government in general and political integrity in particular.

Through the years I began to lose confidence in the incumbent District Attorney and his difficult relationships with Federal Agencies and particularly with the FBI.  After discussions with Republican Party Leadership we reached out to Tom, who was already being courted by the Democratic Party Leadership. Due to election of certain local Town political leaders who favored retaining the incumbent DA, I was unable to follow through with offering the Republican nomination to Tom.  I am not sure if he would have accepted it, there being clear corruption issues in the Town of Brookhaven, a Republican-dominated Town, but we all believed Tom would pursue issues of corruption perhaps not pursued as assiduously by the incumbent.

Tom accepted the Democratic nomination and was elected in 2002. It would have been better for the Republican Party had a Republican DA pursued the anti-corruption investigations in Brookhaven, but Tom was the right person regardless of party and his record was outstanding. For the next two years until my retirement at the end of 2003, we had an excellent working relationship and the DA's Office functioned at a level of professionalism it had not seen in years.

While I cannot speak to the charges and facts surrounding Tom's conviction I feel I can speak to the more personal issues of what it must be like to go through the very public embarrassment and humiliation that comes when a distinguished life-long career comes to this kind of end. I have held public office for over 20 years, have been a partner in a prominent Garden City Law firm, and President of Dowling College. The public disgrace of a career well begun and pursued for so long, but ended so poorly, is unquestionably personally devastating. Every one you meet knows the story, everyone has read about it in Newsday or seen the News 12 tape of you walking out of the Federal Courthouse. The phone stops ringing, and your family and friends just don't know what to say to you. Your wife and children bear an enormous burden and the strain on a family must be incredible. And you know that, no matter what happens, the very public stain and disgrace will remain with you for the rest of your days. Contrast this to most other convicted felons, who might suffer as well but who will never experience the broad range of public humiliation.

I firmly believe that the real suffering, the real penalty, indeed the real punishment in a case like this comes before, during and shortly after the trial.

I would very respectfully request that, in considering Tom's sentence, the Court take these comments from someone who, but for the grace of God, could have made the mistakes attributed to Tom.

Very truly yours,

Robert J. Gaffney

2

# EXHIBIT 46a

*Ralph T. Gazzillo, Esq.*



January 24, 2020

**Re: U.S. vTHOMAS SPOTA**

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722


Dear Judge Azrack:

I write to you on behalf of Thomas Spota. As to my background, I am an attorney admitted to practice before the courts of New York and New Jersey. I have been in law and law enforcement for over fifty years*.  I retired from public service in 2016.

As to Mr. Spota, I first met him when I was a prosecutor, years later when he was in private practice, then when I was a Law Secretary in the Suffolk County Court, and most recently and frequently when he was the Suffolk County District Attorney and I was serving as Supervising Judge of the Suffolk County Criminal Courts. Obviously, in his position and mine, given our respective professional responsibilities, our paths would often cross. I can state without reservation that during that period (as well as throughout the entire time of our acquaintance), I have always and without exception found him to be honorable, professional, courteous, skilled and compassionate. Indeed, and most especially while he was District Attorney, I found him to be faithful to his responsibilities and oath of office; simultaneously, he afforded the same respect to those he dealt with.

- I am a former sergeant with the NYPD, I have engaged in private practice as an attorney, have served as an Assistant District Attorney, was appointed on four separate occasions as a Personal Law Secretary (to a Judge of the Nassau County Court, a Suffolk County Court Judge, and two Justices of the Suffolk County Supreme Court). I was elected to the Suffolk County District Court, and elected and then re-elected to the Suffolk County Court, where I was appointed as an Acting Supreme Court Justice as well as the Supervising Judge of the Suffolk County Criminal Courts.

Hon. J. Azrack                                                     1-24-20 , p.2

Indeed, and in fact, there was one occasion which I believe underscores his character as well as his compassion and sense of justice. Specifically, I was at that time assigned a multi-felony narcotics indictment, one of the hundreds if not thousands I presided over for years. The defendant, a prior felony offender, was facing a mandatory, severe and enhanced prison sentence should he be convicted. Additionally, even a cursory but experienced review of the evidence and his background foreshadowed that any defense would be extremely difficult. He was offered a plea agreement which included a lesser charge; attached to that, however , was an eight-year period of incarceration. He rejected it, but he and his attorney (who was experienced and capable) would have accepted seven. The assigned prosecutor - perhaps sensing the strength of his case - adamantly and persistently refused to entertain the counter-offer.  For whatever reason and I assure you without my instigation, Mr. Spota intervened, overruled the assigned prosecutor, and the case was resolved; in his words, "Eight years is a lot of time ." I recite this event because of all my impressions of Mr. Spota - all favorable - I believe it is a unique snapshot of his character. I should add that the defense attorney was a journeyman lawyer, not notorious, nor flashy, nor politically or otherwise influential. Similarly, neither the defendant nor his case presented any reason for any special consideration.  I firmly believe that Mr. Spota saw him as a fellow human being in a desperate situation where no one - other than Mr. Spota -  could help.   Mr. Spota didn't have to, he wasn't expected to - but he did.

I have no doubt that Your Honor will attribute to this letter whatever value it merits. Your Honor may be equally assured of my continuing cooperation and service in this and all matters of mutual concern.

Respectfully yours,

RALPH T. GAZZILLO

Rtg/

# EXHIBIT 47

January 22, 2020

Dear Judge Azrack,

I am a catholic priest of the diocese of Rockville Centre and have been for over 50 years.  I have known Tom Spota since 1956 when we were attending Chaminade High School on Long Island. We were both members of the track team. Tom and I also attended Fairfield University in Connecticut. It was a small college at the time and of course we knew each other fairly well.  I remember Tom as a friendly guy, a good student and someone who got involved.

After I got ordained, I began serving various parishes in Suffolk County and followed Tom's good works as a lawyer.  I also became aware that Tom and his family took their church life quite seriously both in their home parish and in giving service to one of our poorest churches, Our Lady of The Miraculous Medal in Wyandanch.

I have always thought of Tom as a fine, honest, caring gentlemen.

Respectfully yours,

Reverend Peter Garry

# EXHIBIT 48



# ARCHER, BYINGTON, GLENNON & LEVINE LLP.

ROBERT M. ARCHER*
JOHN H. BYINGTON III
MARTY GLENNON
JULES B. LEVINE (1932-2012)
GARY A. THAYER
JAMES W. VERSOCKI
RICHARD S. CORENTHAL**

.....................

MATTHEW HROMADKA
ALEXANDRA HOWELL
PAUL K. BROWN

.....................

* Partner emeritus-retired
**Tarrytown Resident Partner

ONE HUNTINGTON QUADRANGLE, SUITE 4C10
P.O. BOX 9064
MELVILLE, NY 11747-9064

PHONE:    (631) 249-6565
FACSIMILE:  (631) 777-6906

WWW.ABGLLAW.COM
INFO@ABGLLAW.COM

TARRYTOWN ADDRESS:

**303 SOUTH BROADWAY, SUITE 234
TARRYTOWN, NEW YORK 10591

January 27, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, NY 11722

Dear Judge Azrack:

I am a labor attorney on Long Island and a partner at Archer, Byington, Glennon & Levine, LLP. I have been practicing labor law since 1997. I first met Tom Spota in or about 2005 when I and others in my current firm were practicing law with the Meyer, Suozzi, English & Klein labor practice. As a labor attorney during that period our building and construction Union clients were facing difficult times competing in the labor market while unscrupulous contractors refused to pay area standards and cheated their employees by not paying them legally required wages and benefits for work performed on public work projects pursuant to NYS Labor Law § 220.

These contractors created a major disadvantage and disparity for law-abiding Union contractors that were required to pay the prevailing wage and benefits to their employees for public work projects. I had many interactions with Tom and his office seeking criminal enforcement of the prevailing wage law and penalties for those who violated Labor Law §220. As a fairly new District Attorney at the time, Tom wanted to know what the DA could do to enforce NYS labor laws. At this time, most DAs in the NYC and Long Island area would not prosecute these crimes.

When I first met Tom and his staff, his approach was very direct. He simply stated that the current law had no teeth and it wasn't fair to the law-abiding contractor, the employee that was being cheated, and the taxpayer who had to shoulder the tax shortfall. Tom questioned how it could be that an employee who steals a piece of equipment worth more than $1,000 from an employer could be criminally prosecuted and face felony charges, yet an employer that stole hundreds of thousands of dollars from employees and deprived them of benefits that they were entitled to would not be prosecuted in most cases, and also would not be debarred from bidding on future public work? Tom further understood immediately that these contractors were also depriving the government of the taxes that would have otherwise been derived from income earned by the employees. Many times these contractors failed to pay New York State Workers Compensation benefits and Unemployment Insurance to New York State as well. As a result,

The Honorable Joan M. Azrack
January 27, 2020
Page 2

many of their employees did not have basic health coverage and, if and when they became injured on the job, the uninsured employee would go to the hospital without any coverage.

Tom looked at these issues as something that would hurt the working men and women of Long Island and New York State. These were not looked upon as political or criminal issues to Tom; they were viewed as requiring a sense of fairness in the process and common sense in application. He provided many undocumented employees with a voice, where they would have otherwise had none. Not only would he prosecute cheating contractors, he also would recoup the back pay that the employees were denied and present them with large back pay awards.

As a result of all this, Tom asked to meet with me in 2006 to see what he could do to make Labor Law §220 stronger so that unscrupulous employers would be discouraged from cheating their employees and the taxpayer. He knew immediately the correlation between strong labor laws and the ability to enforce them would lead to a level playing field not only for working families, but also those contractors who abided by the law. It was his initiative that led to the most significant change to the NYS Prevailing Wage law in more than half a century. Tom was the first to seek to get legislation passed that would make Labor Law §220 more meaningful. With that, Tom worked tirelessly and oversaw every step of this massive amendment to Labor Law §220. As a result of this amendment, famously known as the "Spota Bill" to working men and women, these typically vulnerable and underserved workers now had a "voice" in the labor market with the assistance of the Suffolk County District Attorney's office. This is not hyperbole. It is a documented fact that, through Tom's support of this legislation and its enforcement, hundreds if not thousands of employees received millions of dollars in back pay that they would have otherwise not have recovered. Because of Tom, the contracting landscape in Suffolk County changed and there were fewer cheating contractors because they now knew there were real consequences for failing to comply with their legal obligations. I am attaching a summary of the "Spota Bill" that our office had circulated to all labor unions around the time of its passage so you can see for yourself the real changes that were made in this statute.

I have been practicing labor law for almost 23 years and can honestly say that this legislation, spearheaded by Tom Spota personally and by his office, has had a dramatic impact that is hard to quantify. However, you can ask any labor leader on Long Island about the Spota Bill, and they will tell you unequivocally the importance of that measure. Yet, Tom was not satisfied with just getting the bill passed. He made sure that he communicated with every District Attorney in New York State about the importance of the bill and his staff was dispatched to numerous DA's offices around New York State and the country to train ADAs on the enforcement of prevailing wage laws. For years after its passage, building trades unions from around the country would invite Tom to address their forums. Tom was always revered as a hero of the labor movement for the passage of the "Spota Bill".

This is what Tom was like professionally. He cared and followed through on issues important to working men and women. He worked diligently to make sure that people didn't feel excluded or left out. He used the power of his office to help others, especially those without the means or resources available to do so on their own. That is why he wanted to make sure that other DA's offices also understood the importance of the enforcement of labor laws in their

The Honorable Joan M. Azrack
January 27, 2020
Page 3

communities.  Tom didn't look for accolades; in fact, when they were bestowed upon him, he would always deflect attention and say that it was the work of many.

This brings me to Tom as a person.  There is not much of a difference between the professional and the personal.  As a result of working with Tom on issues that affect working men and women, I got to personally know Tom and his wife Mary Ellen.  In fact, our families became friends and would spend time together at labor conferences, where we would frequently go to dinner and spend much of our down time together.  We enjoyed getting to know the Spotas.  They were and are a loving and caring family.  My girls are now 21 and 19, yet every time I would see Tom over the past 10 years, he would ask, by name, how my wife and daughters were doing and where they were in school and work.  These were never just passing comments; they were always heartfelt and said with sincerity.  This was, and is, who Tom really is.  He is a deeply caring and passionate individual who wants to see people succeed and do well.

There are no more sincere and straightforward people than Tom and Mary Ellen.  While I don't know their children personally, I know them through their parents. I know from speaking to Tom and Mary Ellen the enormous toll that this trial and verdict has taken on him and his family.  It breaks my and my families' heart to see the Spotas dragged through this after such a brilliant career. Given his age and the tremendous amount of contributions he has made throughout his years in public service, I think it imperative that the Court weigh what it may see as his faults against all the good he has done for the public over his many years of public service and render a lenient sentence.  Tom is not a threat to society or others.  In fact, he is just the opposite.  I am certain that other labor leaders and unions share my opinion of the greatness of the Suffolk County District Attorney's office under Tom Spota.

Tom should be judged by the sum of his actions, not any one action in isolation.  He led a lifetime of commitment to the public good.  He is a very dedicated husband, father and friend.  No amount of prison time would serve justice in this matter.  To punish Tom in such a way would also be to unnecessarily punish his family.  The punishment has already been severe on Tom and his family.  I spent time with his wife Mary Ellen during one day of the trial and know the punishing toll it has taken on him and the family.  It breaks my heart to see the family suffer.  I hope you will consider the entirety of Tom's life's work when considering his sentence.  Your Honor's compassion and understanding is most appreciated by his family and friends, as well as by all those he has helped over the years.

Respectfully,

Marty Glennon

Enc.

This memo summarizes the most significant changes that the SPOTA BILL made to Section 220 of the Labor Law with regard to prevailing wage violations.

Effective Date of summarized provisions is 4/27/08. The summarized provisions are applicable to contracts entered into after 4/27/08. Therefore, if a prevailing wage violation occurs after that date, but the contract was entered into before 4/27/08, the old law applies. (Laws of New York, 2008, Chapter 8 §11)

The Sponsor's Memorandum in support of the bill states in relevant part:

- The anticipated amendments would graduate the penalties for failing to pay prevailing wages. It is fundamental fairness that a theft of wages from workers should be treated in a similar manner as a theft from any other person.
- This bill amends 220(3-a) of the Labor Law to make the willful failure to file payrolls a crime. Experience has shown that in order to limit their exposure to criminal sanctions, unscrupulous contractors have stopped filing the certified payrolls required under current law. This loophole allows them to continue flouting the law without sell (sic)-reporting envisioned in the statutory scheme. Without this safeguard, the prevailing wage statutes are rendered meaningless. Sponsor's Memorandum A8582A

**Comparison of Section 220 of the Labor Law Pre and Post SPOTA BILL**

1) **Penalty for Willfully Failing To Pay Prevailing Wage**

OLD LAW:

- Applied to any "person or corporation" – "after entering into such contract or sub contract" (Labor Law §220[3])
- Misdemeanor -- punishable by a $500.00 fine + 30 days imprisonment for a first offense. (Labor Law §220[3])
- Second Offense -- $1,000.00 fine and forfeiture of contract. (Labor Law §220[3] )

SPOTA BILL:

- Applies to "any person"[1] (which term includes "entity"[2]) "that participates in public works project in the capacity of a contractor or subcontractor...." (Labor Law §220[3][d][i]).

---

[1] (Labor Law § 220[5][l]) "Person" shall mean a human being and shall also include an "entity" as defined in this article, including, but not limited to, a contractor or subcontractor.

[2] (Labor Law § 220[5][h.]) "Entity" shall mean a partnership, association, joint venture, company, sole proprietorship, corporation or any other form of doing business.

- Aggregate amount <$25,000.00 = A Misdemeanor (Labor Law § 220[3][d][i][1]) (punishable by up to 1 year in jail)
- Aggregate amount >$25,000.00 = E Felony (Labor Law § 220[3][d][i][2]) (punishable by up to 4 years in jail)
- Aggregate amount > $100,000.00 = D Felony (Labor Law § 220[3][d][i][3]) (punishable by up to 7 years in jail)
- Aggregate amount > $500,000.00 = C Felony (Labor Law § 220[3][d][i][4]) (punishable by up to 15 years in jail)
- Dispositions and fines shall be in accordance with the Penal Law[3].  (Labor Law § 220[3][d][ii])
- Second Offense within 5 years– disgorgement of profits and no payment under contract unless "department of jurisdiction"[4] (i.e., contracting agency) determines that money is needed to pay innocent subs and suppliers.  (Labor Law § 220[3][d][iii])

SPOTA BILL casts a broader net than only those "persons or corporations" that "entered into" a contract or subcontract.  The more expansive definition of person (see footnotes 1 and 2) and the inclusion of those who merely "participated in the capacity" of a contractor or subcontractor make it clear that in the context of a public works contract, any entity that looks like a contractor or sub and acts like a contractor or sub is one for prosecution purposes.

Under the old law, there were no Labor Law felonies.  Prosecutors had to rely on creative prosecutorial theories to make felony charges even where the amount of prevailing wages not paid was in the hundreds of thousands of dollars.  They would often use the E felony of Scheme to Defraud (Penal Law *§190.65*).

The Manhattan DA has reportedly used §79-A of the Lien Law to prosecute larcenies (under the lower Penal Law thresholds) for the difference between what was earned and what should have been paid. That is an excellent theory which has never been tested in an appellate court.

If that theory of prosecution is found to be successful and viable in some appellate court, this amendment to the statute might not be as significant, except for its expanded reach. The statute may have the unintended effect of undermining the Lien Law larceny theory because a court might hold that the legislature, in specifically addressing the failure to pay prevailing wages with more severe criminal sanctions but requiring higher monetary

---

[3] (Penal Law Articles 60, 65, 70 and 80.)

[4] The department of jurisdiction as herein referred to shall be the department of the state, board or officer in the state, or municipal corporation or commission or board appointed pursuant to law, whose duty it is to prepare or direct the preparation of the plans and specifications for a public work project. (Labor Law §220 [3-a][iv])

thresholds, has pre-empted the use of the grand larceny statutes for prosecuting these matters.

**2) Penalty for Payroll Violations**

OLD LAW (Labor Law § 220[3-a][a])

- No criminal penalty for failing to file payrolls under the Labor Law.
- Only obligation of contracting agency was to "receive and maintain" the payrolls.

SPOTA BILL (Labor Law § 220[3-a][a.][iii][iv])

- E Felony for failure of contractor or sub to file.
- $1,000.00 civil penalty for late filing.
- Contracting agency must designate specific person to not only receive and maintain" the payrolls; that person must now also review the payrolls for "facial validity."

Under the old law, prosecutors would charge the Class E Felonies of Falsifying Business Records In the First Degree (Penal Law *§175.10*) and Offering a False Instrument for Filing In the First Degree (Penal Law *§175.35*) for filing false payrolls. If the contractor chose not to file at all, there were no criminal penalties.

False filings were also used as the basis for prosecuting contractors under a theory of Grand Larceny (Penal Law §§ 155.30-155.42) by false pretenses. Those prosecutions had mixed results. Compare (*People v. Vanguard Meter Service*, 160 Misc. 2d 685, 611 N.Y.S.2d 430 [Sup. Ct. NY 1994]) with (*People v. Michael Caridi, et. al.,* 2006 N.Y. Misc. LEXIS 4086; 235 N.Y.L.J. 103 [Sup Ct. Rockland County 2006]). Even if the false pretense larceny theory is viable, the problem with the new statute may again be that a court might hold that the legislature, in specifically addressing the failure to pay prevailing wages with more severe criminal sanctions but requiring higher monetary thresholds, has pre-empted the use of the grand larceny statutes for prosecuting these matters.

**3) New York City Comptroller and NYS Commissioner of Labor**

Willful Failure to File Payroll After Request

OLD LAW
- Comptroller or Commissioner would order the department of jurisdiction (contracting agency) to immediately withhold from payment up to twenty-five percent of the amount, not to exceed one hundred thousand dollars, to be paid under the terms of the contract. Said amount withheld had to be immediately released upon receipt by the department of jurisdiction (contracting agency) of a

notice from the Comptroller or Commissioner indicating that the request for records had been satisfied. (Labor Law §220 [3-a][c])

SPOTA BILL -- In addition to the foregoing, adds new subdivision with criminal sanctions.

- If either of these two agencies request payrolls from any entity doing public work the willful failure to provide the payrolls within 90 is a class A misdemeanor (punishable by up to one year in jail[5]). (Labor Law §220 (3-a)(d])

- A second violation within 5 years is a class E felony (punishable by up to four years in jail [6]). (Labor Law §220 [3-a][d])

Willful Failure to Pay Prevailing Wage After Final Determination of Willful Violation

OLD LAW

- First offense -- misdemeanor punishable by a fine of five hundred dollars or by imprisonment for not more than thirty days, or by both such fine and imprisonment (Labor Law §220 [9])
- Second offense -- fine of one thousand dollars (Labor Law §220 [9])

SPOTA BILL

- First Offense – misdemeanor punishable, in accordance with the penal law (up to one year in jail[7]).
- Second Offense Within 5 Years – Class E Felony (up to 4 years in jail)  (Labor Law §220 [9] )

---

[5] (Penal Law § 55.10[2][a][b]) Although subdivision "a" of Penal Law § 55.10(2) is technically limited to the Penal Law, a fair reading of subdivisions a and b make it clear that this offense should be treated as an A misdemeanor punishable by up to 1 year in jail. (Penal Law § 70.15[1])

[6] (Penal Law §70.00[2][e])

[7] (Penal Law §§ 55.10[2][b];70.15[1])

# EXHIBIT 49

February 11, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Re: Mr. Thomas Spota

Dear Judge Azrack:

I felt compelled to write this letter because of my eternal gratitude for the immeasurable and lasting–positive impact Mr. Thomas Spota has had on Hope House Ministries. If not for Mr. Spota's involvement, hundreds of my Hope House brothers would not have had the opportunity to change their lives and realize their true potential.

Hope House Ministries is a unique community in that it largely serves the community of addicts that have repeatedly been involved in the justice system and failed at other opportunities to recover. If not for Mr. Spota, it would not be possible for Hope House to serve this specific community. He did not judge us based on our worst acts, but rather on our potential. He believed that Hope House could effectively treat the most "untreatable" of addicts , and advocated to give myself, and many of my Hope House brothers, an incredible opportunity to change and make something of our lives.

Because of Mr. Spota's efforts, Hope House has successfully rehabilitated hundreds of young men that were common fixtures in the Suffolk County Courthouses and jails . Many of these men have gone on to become lawyers, accountants, healthcare professionals, and more. Most importantly, many of these men have not re-offended . This would not have been possible without Mr. Spota's assistance. I have benefitted from his compassion personally, and proudly and gratefully proclaim that l have been a member of the New York State Bar since December 12, 2018.

While contemplating Mr. Spota's sentence, I hope that Your Honor can consider the impact that he has had on Hope House Ministries and the many young men who have benefitted from his steadfast support of the Hope House program over the years**.**

Respectfully,

# EXHIBIT 49a



**JAMES A. GOWAN, ESQ.**

February 4, 2020

Hon. Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, NY   11722

Dear Judge Azrack:

      I have been admitted to practice law in the State of New York since 1959 and my practice has been principally in Suffolk County, N.Y. since 1960. In 1977 I was elected a Justice of the Supreme Court, State of New York; re-elected in 1991 and so served, until retirement on January 1, 2001. During such service I was also appointed Administrative Judge of Suffolk County and served as such for three (3) years.

      On retirement, I returned to the practice in Suffolk County, performing, among other things, some stints as a Special Referee for the Supreme Court, Appellate Division, 2nd Dept. dealing with attorney misconduct.

      I still practice even at 90 years of age.

      Such practice and service has put me in a unique position of knowing and having a great number of Attorneys, including Thomas Spota, practice in the various parts I presided over. In fact, in one case, Mr. Spota successfully represented a group of Suffolk County Citizens protesting the establishment of a jail, in one of the vacated buildings, at what was once known as Pilgrim State Hospital, Brentwood, New York.

      Moreover, I knew Thomas Spota when he was one of the very professional and competent ADAs, in the office of my very good friend, District Attorney Patrick Henry (now deceased).

      I can anticipate that there will be persons, that know me well, who will ponder "How can he support a person who has been convicted of a crime?".

      To be clear this is the first time I have so written for anyone!

      In response to those "naysayers", Thomas Spota and I have been friends for a number of years. To me and with me he has always been forthright and I have never doubted his veracity. I know him, although I am mystified and troubled at how and why all of this happened. Nonetheless, I cannot and will not desert my friend.

      Thank you for considering my letter.

Respectfully Submitted,

James A. Gowan

# EXHIBIT 50

Frank B. Guidice

February 1, 2020

The Honorable Joan Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York, 11722

Dear Judge Azrack,

My name is Frank Guidice. I am a retired Police Officer, having served 42 years in both Nassau and Suffolk Counties. I served 30 years with the Nassau County Police Department. I was assigned to investigative commands for 20 of those years. My last 10 years I was assigned as the Commanding Officer of the   Homicide Squad   for the Nassau County Police Department. I retired as a Detective Lieutenant in March 2002. In July 2006 I was hired as an investigator for the Suffolk County District Attorney's Office. I was promoted to Deputy Chief Investigator in December 2006. In January 2012 I was promoted to Chief Investigator, where I served until January 2018.

Working in the executive office in the District Attorney's Office provided me with the opportunity to work closely with Tom Spota daily. During that time my respect and admiration for Tom would grow as a result of the qualities he exhibited on a daily basis. He was a dedicated, ethical, hardworking prosecutor who distinguished himself throughout his career. He possessed a strong moral compass which was reflected in the manner in which he administered the duties of his office. He was a tireless prosecutor, who would constantly develop new strategies and programs to accomplish the goals which he established for the Suffolk County District Attorney's Office.

Tom was insightful and aggressive in his pursuit of justice . He continually identified new areas of concern, where opportunistic individuals could commit crimes for profit at the expense of the citizens of Suffolk County. Investigation into environmental crime was one such area. Tom enhanced the existing Environmental Crime Unit, which operated in the office. Additional investigators were assigned together with Assistant District Attorneys to address this problem. One of the unit's early successes was identifying a group of individuals responsible  for illegal dumping at Roberto Clemente Park and a housing development for returning Veterans in Islip Town. These people were identified, arrested, and prosecuted for Dumping Toxic Waste in those areas. These actions created serious health risks to these communities. As part the defendants' sentences, they were required to make restitution for the clean-up.

Tom was responsive to the ever-changing criminal climate. He created two separate Task Forces to fight the prolific Heroin epidemic occurring throughout Suffolk County. Collaborating with multiple police agencies to impact drug trafficking in the county and the East End of Long Island, Tom worked with more than 20 Police Agencies operating in Suffolk County and the East End to promote the sharing of criminal intelligence among the agencies in these jurisdictions. Information on Guns, Gangs, Drugs and Human Trafficking became available to all participating agencies, thereby enhancing the ability of all of these agencies to combat these crimes.

Tom was a compassionate man, and a true advocate for the people he served. He pursued justice for victims, some of whom had no voice at the time they were victimized. In 2002 Tom impaneled a Special Grand Jury to investigate sexual abuse allegations against priests in the Catholic Church. At the time it was reported that this grand jury was believed to be the first in the nation to examine these issues. The investigation shed light on the scope of this problem, and provided recommendations to further deal with these issues.

Tom also advocated for the minority communities, particularly the Hispanic community, which was suspicious of law enforcement and reluctant to report crimes committed against them. In one such incident in 2014 a Suffolk County Police Sergeant was stopping vehicles being operated by Hispanic men and stealing money from their wallets. Tom worked with the Victim Advocate within the Hispanic community to help identify additional victims and convince them to come forward. Additional victims were identified, who provided information which supported the arrest and conviction of the Police Sergeant.

Tom is a devoted husband to Mary Ellen. Together they have raised three successful children. He's a devout Catholic and regularly attends services with Mary Ellen. Tom is a caring, charitable person who has supported various youth organizations for as long as I have known him.

I have closely followed the recent trial of Tom Spota. I have read descriptions and comments regarding Tom's career, all based on the recent issue before the Court.  It is my hope that this issue does not negate the record of accomplishment which has been written over a lifetime -- a record that reflects the career of a dedicated, honest, ethical career prosecutor.

I respectfully request that you consider Tom's entire life and career before sentencing him. This record is a true reflection of Thomas J. Spota, and the service he performed for the benefit of the residents of Suffolk County achieved over a lifetime of service.

Thank you for your time and consideration.

Respectfully,

Frank B. Guidice

Frank B. Guidice

# EXHIBIT 51

John Halverson, Esq.

February 6, 2020

The Honorable Joan M. Azrack
United State District Judge
United States Courthouse
100 Federal Plaza
Central Islip, NY 11722

Dear Judge Azrack:

I have known Mr. Spota since I was a young boy. My late father, Edward Halverson, was a Homicide Detective for the Suffolk County Police Department and had many homicide cases with then-Assistant District Attorney Tom Spota. My father always spoke highly of him and would extol his fine character and commitment to prosecuting some of the most heinous crimes in Suffolk County. That was hearsay, of course, until I got to know him personally as well as professionally and saw that my father was right.

After I graduated college in 1991, I worked in our family business, Patriot Courier, for the next 11 years. After a very long and stressful week, I stopped by my father's restaurant to talk to him about some business matters. It just so happened that Mr. Spota was there having lunch with my father and the late Honorable Judge Patrick Henry. Both attorneys asked me how I was doing, and I said, "It is what it is," and proceeded to tell them I was very unhappy with my career in the family business. By the end of our conversation, it was Tom Spota and Judge Henry that gave me inspiring advice and words of encouragement to pursue the career in law that I had always wanted to. Next thing I knew, my wife and I were moving and I was taking the LSAT. In 2005, I graduated from law school and began my second act as an Assistant District Attorney under Mr. Spota. This is where I really got to know his character as a man of integrity.

In all of my dealings with Tom in the six years as an ADA, the thing he said most was, "seek justice." After I left the Suffolk County District Attorney's office in 2011, I started my own criminal defense practice. All of my cases since then have been exclusively in Suffolk County.

Over the years, I have had numerous professional dealings with Tom on cases, many of which were high profile and newsworthy. In all, his only concern was justice. A few of them really stick out in my mind as great examples of his integrity and my respect for him.

One case involved SCPD Detectives that I believe gave false testimony during a pre-trial hearing. The ADA that handled the case investigated my allegation and agreed with my assessment. Tom was notified and immediately calendared my clients' case and dismissed the indictment. It was swift, just, and Tom followed it with an order for a full investigation. As a result, the case was presented to a Grand Jury.

Another case with Tom that stands out involved the press and had high political stakes. When I met with Tom directly, I took notice that there was not one mention of press or politics in our discussions. Once again, his integrity stood true as he was only interested in justice.

The very last case that I worked with Tom closely on, is when one of my clients had an incident that resulted in two men tragically being killed. It was a highly emotional case that involved a lot of high political stakes and tons of media coverage. What I called an accident, could have been called a murder. It was intense and involved many constituents, including victims' family and communities. Each and every meeting with Tom in the throngs of this emotionally charged case, he was only interested in justice and 'doing the right thing.' He was very matter of fact, and concerned about 'getting it right.' In the end, justice prevailed, and there was no doubt Tom's steadfast leadership made that happen.

In closing, my final thoughts are with Mary Ellen, his wife who I have also known for many years as well. I watched many days of Tom's trial and key testimonies. I had many interactions with her and this is heartbreaking for their family, to say the least.

In summary, I have only known Tom Spota to 'do the right thing' and be a man of his word in all of my dealings with him. While my own father extolled his virtues, it was only until I interacted with him over the years with the Suffolk County D.A.'s office that I became witness to it. As a man of faith, a friend, and former associate, I believe whole-heartedly that this man lived several decades of 'doing the right thing.' For the countless years that Tom has served in that fashion, I hope he will be treated with the leniency and compassion that he richly deserves. He's a good man.

Respectfully,

John Halverson, Esq.

# EXHIBIT 52

January 20, 2020

The Honorable Joan M. Azrack

United States District Judge

United States Courthouse

100 Federal Plaza

Central Islip, New York 11722

Dear Judge Azrack,

My name is Walter Heesch, formerly from Long Island, now retired in Naples, Florida. I spent 37 years with the New York State Police, having served as Major/Troop Commander of Troop L, Long Island the last 10 years of my career.

I have known Tom Spota both personally and professionally for more than 25 years. I can attest to his good character, integrity, love of family, hard work and dedication to duty. As you are aware he was a county prosecutor, a private practice lawyer, and finally the District Attorney for Suffolk County. Tom and I worked well together in our mutual law enforcement endeavors. He had a great work ethic and was able to bring parties together. I always knew him to be fair and unbiased. As District Attorney I witnessed his compassion for victims as well as his fairness for offenders. Together we worked on some of the most noteworthy cases in Suffolk County with great success. He has always been there for me and the State Police. Tom has spent his life doing the right thing. I hold him in high regard as a friend and as a professional.

I have been keeping abreast of this matter through Newsday online. I know how much Tom and his family have suffered the emotional and financial burdens of this case. But most of all I am struck by the severe penalty incurred with regards to his reputation, which in the end, we cherish most.

Judge Azrack, please take this into consideration for the next phase of the case.


Respectfully,

Walter Heesch
Walter Heesch

# EXHIBIT 53

**Edward G. Heilig, Esq.**



February 7, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York  11722

Dear Judge Azrack:

I write this letter in support of Tom Spota, who will be appearing before Your Honor for sentencing. It is my firm belief that Tom deserves the leniency and mercy of this Court, as the true measure of his character contrasts sharply with what Your Honor heard during the trial in this matter.

Tom Spota and I go back a long way, from my early days as a prosecutor in the late 1980's when Tom was a defense attorney. I developed a deep respect for the man, as he always presented himself as a straight shooter, never seeking to take advantage of a newly appointed ADA, always being forthright with me in his arguments for his client, and always giving advice in a helpful manner. While I was with the Suffolk County Attorney's Office handling state and federal civil matters, I had a trial in state court and Tom was the plaintiff's attorney. It was a difficult and emotional trial involving a police chase wherein Tom's civilian client was severely injured by the driver being chased. Tom conducted himself in the most professional manner during the trial and even after a verdict for the defense he offered valuable constructive criticism that helped me to become a better attorney. There are few lawyers that would do so in such a case. My respect and admiration for the man grew during and after this trial.

When Tom was elected District Attorney of Suffolk County in November of 2001, I was surprised and flattered when he asked me to rejoin the office as a Bureau Chief. I agreed and worked beside Tom for the next 16 years. I rose to the rank of Division Chief and oversaw the financial crime bureaus as well as the administration of the office. During my 16 years in the SCDA working closely with Tom I never witnessed or heard a complaint that in any way reflects the person who was portrayed at trial. Simply stated, that is not the Tom Spota I know and respect. What I did witness many times was a man who took great pride in helping the people of Suffolk County. I saw a man who would meet with the families of victims who died in DWI-related cases, showing compassion and sympathy while at the same time explaining the inadequacies in the laws dealing with such cases. I saw a man who would go out of his way to assist defendants struggling with addiction to get the help they needed by ensuring that they got into a program that would help them recover, not just treat and release them. I saw a man who would meet with Assistant District Attorneys that were struggling with personal health or family issues wherein he would help them through their tough times in any way he could. I saw a man who sought daily to improve the working conditions of underpaid and overworked ADAs and support staff in the District Attorney's office. I saw a man who would stop and talk to a civil service janitor in our building and treat him with the same respect and courtesy as he would in speaking to a state-wide elected official. I saw a man who had

a deep love for his wife and family and who would always regale and amuse us with stories of their outings and vacations together that clearly showed such love.

I offer this to show you that Mr. Spota has done many, many good things in his life for other people and that he dispensed justice with mercy and compassion. I respectfully request that Your Honor take this into consideration when passing judgment on Tom at sentencing. Thank you for taking the time to read this letter.

Respectfully,

Edward G. Heilig

# EXHIBIT 54

Dear Judge Azrack:

In March, 2020, I retired from public service after more than 31 years as an assistant district attorney. I knew Tom Spota from my first day until my last day of service. I first met him as an adversary whose reputation preceded him. I found him to be a zealous advocate and someone whose word could be relied upon. Our interactions were both professional and cordial. In simplest terms, he was the defense attorney who did not give rise to groans and "eye-rolling."

Tom became my boss as the District Attorney in January, 2002, after he defeated the incumbent. It would be an understatement to say that the preceding campaign season was contentious. And this continued after Election Day as the incumbent would not allow the existing professional staff to provide the content of their employment files to Tom's transition team. The professionals had to reapply for their jobs. Nevertheless, Tom retained the majority of the staff, including many who had fought hard legal battles with Tom as their adversary.

I have been in the workforce for more than 50 years. And I can say, without hesitation, that Tom was the boss that other bosses should aspire to be. He led by example. He did not expect more of the lawyers than he would expect of himself. But make no mistake, he expected a lot from himself. Tom never lost sight of the fact that we were there to seek justice for crime victims as well as defendants. He appreciated the importance of treating crime victims fairly, and he understood that sometimes it was necessary to have "hard talks" with crime victims.

Tom had zero tolerance for the employees who behaved inappropriately inside or outside of the courtroom. He made an effort to really know the people who worked for him. He recognized and rewarded merit. He was accessible. Tom was willing to work with people who were going through their own challenges or challenges within their families. His position was, "Do what you need to do; we'll work it out." This applied to my colleagues who were battling cancer as well as the colleagues who were dealing with ill or elderly parents. I was a beneficiary of his caring as I coped with a parent who █████████████████████

Thank you for this opportunity to tell you about the man who earned my respect.

Respectfully,

Keri M. Herzog

# EXHIBIT 55

The Honorable Joan M. Azrack

United States District Judge

United States Court House

100 Federal Plaza

Central Islip, New York 11722

Dear Judge Azrack:

My name is Terry Hill and I am a former Suffolk County Detective, retired and living in Colorado. I was a police officer for forty nine years, assigned to the District Attorney's Office for approximately 40 of those years. I've served under 4 District Attorneys.

In the 1980's we (my wife and I) needed an attorney for a car accident. I first met Mr. Spota when I retained him to represent us. We chose him due to his stellar reputation as an honest and very professional attorney. As it turned out, he was outstanding.

When Mr. Spota was elected to the office of the District Attorney, he brought with him a new vitality to the office. As an ex-Marine, his self-discipline was immediately obvious. He encouraged investigations and demanded accuracy of any information presented.

On occasion, some of the cases he reviewed would catch his eye and he would look at the defendant's record. If it was a non-violent crime and the defendant was not a repeat offender he would discuss with the arresting detective (me included) the possibility of reducing the charges, in order to give the offender a second chance.

Over my years working for Mr. Spota we became work friends, partially because I drove him to many political, Police, and DA functions and fundraisers. It was during these extended periods of time together that I got to know the man as more than just a boss. Because of his accessibility to his subordinates, most detectives would seek his guidance regarding investigations and his advice was always intelligent -- never suggesting any crossing of the line.

████████████████████████████████████████ It is a testament to Mr. Spota's compassion that ████████████████████████ ████████████████████████████████████████ He knew ████████████████████████ How many bosses would do that to help an employee? Mr. Spota knew that we had 6 children and another child ████████████████████████ ████████████████████████████ Again, I repeat, how many bosses would do that to help an employee?

Tom Spota has one fault that I will point out. He is unfailing in trusting his subordinates. He expected his supervisors, line ADAs and detectives to always be up front and honest. This trust is what I think put him in his current situation.

When I heard about what was happening, I called him from Colorado to express my concerns and hopes that everything would turn out all right. I was very distressed to hear the stress in his voice, his

confession of not being able to sleep, and how he has lost everything. Most importantly, I was concerned about the negative impact this has had on his wife and two children. He grieves for the loss of people who he once thought were his friends. He is 78 years old, and devastated.

Your Honor, I ask that you please formulate your sentence keeping in mind all the good he's done, his age, and the damage to his health and family. This good man has lost everything, including his unblemished, 50-year career.

Should you have any need to clarify any information I have provided please feel free to call me at

███████████

Respectfully Submitted,

Terry W. Hill

# EXHIBIT 56

February 6, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Re:     Thomas J. Spota

Dear Judge Azrack:

I moved into Hope House Ministries, January 3, 2005 when I was 19 years old. I was blessed to live there for two and half years. Living there was the greatest thing that ever happened to me.

They took a scared, angry, and confused boy and transformed my life. The residents, staff, and volunteers loved me until I could love myself and gave me hope until I had some of my own. These are ordinary people doing extraordinary things.

The experiences and help I received forged me into the man I am today. Without Hope House, I would be dead or in prison. My most cherished relationships developed during those formative years. My success and well-being is a direct result of Hope House and its past and current residents who have become my family. I would not have met these people or benefitted from these positive experiences if it were not for the former Suffolk District Attorney.

Mr. Spota has directly and indirectly changed our lives. I truly can't count how many of us were graciously mandated to Hope House because of his direct intervention. Many have become lawyers, accountants, teachers, social workers, artisans and other successful occupations. We have families, homes and careers because a District Attorney granted us the opportunity to change our lives. Without him, we would not be where we are today. Hope House exists and continues to thrive because of people like Mr. Spota. I am forever grateful and indebted to him.

Respectfully

# EXHIBIT 57

James H. Johnsen
███████████
███████████

January 20, 2020

The Honorable Joan M. Azrack
United States District Judge
United States District Courthouse
100 Federal Plaza
Central Islip, NY 11722

Subject: Thomas J. Spota

Dear Judge Azrack:

My relationship with Tom Spota is a coincidental one, a result of a long and strong friendship that exists between our wives. While they see one another more frequently, Tom and I have spent time together when we socialize as couples.

Initially I was intimidated by the thought of going out with the Suffolk County District Attorney but he quickly put my fears to rest. The man I met was a "regular guy". Delighted by small pleasures, devoted to wife and family, and more interested in others than himself.

I suspect that my profession (I was a Suffolk County Police Department detective) has developed in me a sense for seeing what could be called the dark side of a person. Tom never gave me that feeling.

We had a conversation a long time ago that will always define Tom Spota for me.  Tom, having left his position as a Suffolk County Assistant District Attorney had reentered private practice and was contemplating a run for the office of District Attorney. I asked him what motivated him to consider that and  he told me that his days as an ADA were the most rewarding and happiest of his career. He missed public service.

Like my wife I was tremendously impressed by Tom's extended family and friends who were in the courtroom every day supporting the Husband, Dad, and pal they all love while at the same time their hearts were breaking.

A lot has  transpired over the past few years, but I still feel the way I always have, : Tom Spota is a good man.

Respectfully submitted,

James H. Johnsen

James H. Johnsen

# EXHIBIT 58

Judith A. Johnsen

January 20, 2020

The Honorable Joan M. Azrack
United States District Judge
United States District Courthouse
100 Federal Plaza
Central Islip, New York 11722

Subject:  Thomas J. Spota

Dear Judge Azrack,

I am writing to you on behalf of Thomas Spota.

I have been friends with Tom Spota's wife for a little over thirty years.  We worked as colleagues, in the same agency in the late 1980's.  Our career paths took us in different directions and we continued our friendship by meeting for lunch regularly while we worked full time.  After retiring we continued to get together as friends on a regular basis.

One way you get to know a person is to spend time with them personally.  As often is the case when you have a friend, occasionally you may try to get together as couples.  As many of us experience, sometimes these couple relationships work and sometimes they don't.  From my perspective I enjoyed socializing with Mary Ellen and Tom as a couple.  Tom is a decent, respectful, friendly family man, with a good sense of humor.  I never felt uncomfortable in his presence and always enjoyed our couple outings.

Tom expressed pride in the entertainment resources we have on Long Island.  The plays we went to were not Broadway plays; they were local.  The last time we went out we went to a play to support his neighbor's son, who had a role in the play.  As couples we both enjoyed talking about our lake vacations with our children and grandchildren.  I liked how Tom was often delighted with simple things.

Another way to get to know someone is watch how they interact with other people.  Almost every time we went out as a couple someone approached Tom to say hello.  I noticed that each of these people were very happy to see him.  He was always gracious, friendly and

kind.  He would be upset if he couldn't recall where he knew the person from or remember a name.  He tried to search his mind to remember rather than dismiss it and get back to socializing.  This is not an example of a person who thinks of himself as above another.

On one occasion many years ago, his wife and I went out to lunch to celebrate her birthday.  Unexpectedly he dropped in to the restaurant to say "Hi."  I don't know many men who would so comfortably do that.

We are not the kind of friends who spent time with one another's families.  So even though I met their children a couple of times I really didn't know them.  My husband and I attended the trial in order to offer our support and I got to know their family better.  I learned from his children what a fun grandfather he is to his five very young grandchildren.  I could easily understand that because I think he has a sense of play from comments his wife has made of how he likes to swim and plays games.

I was able to see another aspect of Tom, whose family and friends unselfishly supported him during the trial.  His adult children made hard choices to be at his side.  They all have their own careers and families and chose to be there consistently even though it must have been very difficult managing the time away.  In addition there were extended family, friends and colleagues at the trial, some who traveled long distances to be there. These people took time out of their busy lives and the holiday season preparations to be at the trial.  This says something about Tom as a person.  These people loved him and wanted to be with him and his family during this very difficult time.

This is a beautiful family.  The pain this family has gone through is beyond what I could ever imagine.  Their future has become a huge "unknown".  The lengthy process has taken its toll on his wife, his children, grandchildren, and everyone who cares about them.  At retirement age, a time in life when a couple should be enjoying their later years together, their life and their future has been turned upside down.  This whole situation has broken my heart.  I was totally shocked when I heard the verdict.

It's very sad when someone who aspires to be a public servant and has served our county well is defined by an overly negative media as having a "corrupt organization." If we had an overly positive media, then Tom could also be defined as a "saint." Media aside, my impression of Tom is that he is genuine and real and has good values. One thing I believe is "The world is better off with Tom Spota in it than not in it."

Please consider these examples and impressions as decisions are made that affect Tom Spota's future and that of his family.

Respectfully submitted,

*Judith A. Johnsen*

Judith A. Johnsen

# EXHIBIT 59

JAMES F. KANE

January 15, 2020

Dear Judge Azrack,

I write to Your Honor as a personal friend of Tom Spota and his family for over 35 years. I am not, and never have been a civil servant or employed by government.

Tom has been giving his life to public service for generations. Tom was a Marine, who served our country and was honorably discharged after serving a full term. While in college Tom became a volunteer Fireman in New Hyde Park NY, and volunteered for many years. After completing law school and passing the Bar exam, Tom went to work for the people working as an Assistant District Attorney for several more years. As an attorney in private practice he worked for the cause of providing food to the needy, still operating today. Once again, Tom went back to serving the public as our Suffolk County District Attorney, serving four terms.

Tom befriended my father and consoled him in his final years; dad passed in October 2018.

I sincerely hope and request Your Honor will consider his kind, considerate life in full, when you are to decide on his future. Tom and his family have already paid a huge price for his association with Mr. Burke.  He has lost his position, law license, and reputation, and experienced tremendous family suffering. At his age, jail time is the equivalent to a death sentence.

Respectfully submitted,

Jim Kane

# EXHIBIT 60

Mary K. Kane
Attorney at Law

January 21, 2020

The Honorable Joan M. Azrack
United States District Judge
United States Courthouse
100 Federal Plaza
Central Islip,  New York    11722

Dear Judge Azrack:

This letter is sent to respectfully request that Tom Spota receive a lenient sentence.

By way of introduction, I have been a New York attorney for close to forty years, and during all this
time I have known Tom, his wife and his family.

As a young Assistant District Attorney in the early 1980's, I met Tom and I always tried to observe
him in the Courtroom.  When I became a defense attorney, Tom was always available for me, and
numerous other young attorneys, to answer questions about our upcoming trials.  Ever since I
met Tom, he has been generous with his time and with his knowledge.

For ten years, I shared office space with Tom and his partners, and had daily interactions with
him.  Tom helped me with my myriad of questions concerning running a law office, as well as, with
legal and ethical issues, especially those I faced as a Court appointed attorney for children. During
this time, I was able to observe, first hand, his compassion for individuals seeking legal advice.
Further, I acted as co-counsel with Tom on several cases, but there is one case that stands out
for me, that truly reflects his character.  Tom and I handled a case where young boys were
sexually abused by a priest.  During the investigation and interviews, I was keenly aware of Tom's
sensitivity, compassion, and his concern for the well being of these young boys and their families.

For these reasons, I respectfully request that you take this letter into consideration and impose a
lenient sentence.

Respectfully,

Mary K. Kane